**Helen MAXIE, formerly known as Helen Fernandez, Plaintiff,**

v.

**John FERNANDEZ, Defendant.**

**No. CA 86–691–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 8, 1986.

Harry P. Anderson, Jr., Richmond, Va., for plaintiff.

Stephen W. Bricker, Bremner, Byrne & Baber, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This complaint was brought pursuant to the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. section 1738A (PKPA). The plaintiff, Ms. Maxie, and the defendant, Dr. Fernandez, were married in 1972, and divorced in 1983. The child who is at the center of this jurisdictional tug-of-war, John Anthony Fernandez-Miranda II, was born during the marriage, on June 9, 1978. The plaintiff seeks a declaration from this Court as to which court—the Henrico County, Virginia Juvenile and Domestic Relations Court or the District of Columbia Superior Court—has jurisdiction over custody determinations regarding the child, Anthony.

■ The first issue that this Court must address is that of jurisdiction. Federal question jurisdiction clearly exists under 28 U.S.C. section 1331. In addition, the Fourth Circuit has held that Congress intended to create a right of action maintainable in the federal courts under PKPA. *Hickey v. Baxter*, 800 F.2d 430, 431 (4th Cir.1986). This Court agrees with the Fourth Circuit, and the other three circuits which have held likewise, that without a federal forum to enforce the restrictions imposed by the Act upon state courts, those restrictions would be rendered "nugatory" and Congress's purpose would be "thwarted." *See McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986); *Heartfield v. Heartfield*, 749 F.2d 1138 (5th Cir.1985);

and *Flood v. Braaten*, 727 F.2d 303 (3rd Cir.1984).

■ In addition, federal court intervention is proper when the courts of two different jurisdictions are asserting jurisdiction over a custody determination. *Heartfield*, 749 F.2d at 1141. Although the defendant contends otherwise, this Court finds that the Henrico County Juvenile and Domestic Relations Court had personal jurisdiction over the defendant in this matter at the time of the April 9, 1986 hearing. The Court finds that the plaintiff provided the Henrico County Court officials with her ex-husband's home and business addresses as she thought them to be, and that the court then gave notice to Dr. Fernandez by certified mail, return receipt requested. This notice satisfies the requirements of due process and the requirements of Va. Code Annotated section 20–128 (1983 Repl. Vol.). In addition to the Henrico Court asserting jurisdiction over this matter, the Superior Court of the District of Columbia has continued to assert jurisdiction over issues of custody since it entered its first order in 1981. As recent as October 13, 1986, the District of Columbia Court ordered Ms. Maxie to appear before it with Anthony for a hearing on Dr. Fernandez's motion to change custody. Thus, there are courts of two different jurisdictions asserting jurisdiction over custody determinations regarding Anthony.

Therefore, this Court has jurisdiction to decide the narrow issue presented by this case: which of the two competing jurisdictions—Henrico County or the District of Columbia—has jurisdiction under the PKPA to make custody determinations regarding Anthony.

PKPA provides an elaborate set of guidelines to help states determine which jurisdiction competing for the right to make a custody determination can properly assert its jurisdiction. Subsection (c) of PKPA sets forth the requirements for a court's custody determination to be consistent with the Act.[1]

---

1. A child custody determination made by a court of a State is consistent with the provisions

of this section only if—

Subsection (c)(1) refers to the particular jurisdictional requirements of the state (or district in this case). Here, both Virginia and the District of Columbia have adopted the Uniform Child Custody Jurisdiction Act (UCCJA), which is very similar to PKPA in terms of jurisdictional requirements. *See* Va. Code Ann. sections 20–125 through 20–146 (1983 Repl.Vol. & 1986 Cum.Supp.); District of Columbia Code sections 16–4501 through 16–4524 (1986 Cum.Supp.).

Both courts—Henrico County and the District of Columbia—satisfy their own requirements for jurisdiction, as required by subsection (c)(1). Based on the facts of this case, the District of Columbia court's jurisdictional requirement is met pursuant to section 16–4503(a)(1) of the DC Code.[2] Plaintiff, defendant, and Anthony resided in the District of Columbia until April, 1981 when Anthony was taken to Chesterfield County, Virginia to live with his maternal grandparents. The plaintiff and defendant separated on June 30, 1981, both still living in the District. A *pendente lite* custody order was entered in November 1981 by the Superior Court of the District of Columbia, awarding custody to the mother. Ms. Maxie joined Anthony in Chesterfield County in November, 1981. Dr. Fernandez continued to reside in the District, where the parties continued to pursue issues of custody and support.

The Virginia requirements for jurisdiction set forth in Va. Code section 20–126 are also satisfied due to the fact that since 1981 Virginia has been the legal residence of both Anthony and Ms. Maxie.[3] Thus, both courts satisfy the requirements of subsection (c)(1).

Subsection (c)(2), which includes essentially the same standards as the UCCJA, initially appears to be satisfied by both jurisdictions. The District of Columbia court appears to satisfy the requirement through subsection (c)(2)(E) regarding "continuing jurisdiction" while the Henrico

---

(1) such court has jurisdiction under the law of such State; and (2) one of the following conditions is met:

(A) Such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

2. The District (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from the District because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in the District.

3. A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: 1. This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or 2. It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

court clearly satisfies subsection (c)(2) through either (c)(2)(A) or (D).

The precise issue faced by this Court is whether the Superior Court of the District of Columbia or the Henrico County Juvenile and Domestic Relations Court has jurisdiction over custody determinations regarding Anthony. If both jurisdictions satisfy the jurisdictional requirements—that is, if DC has continuing jurisdiction under (E) and Henrico County has jurisdiction under (A)—then Henrico County would have to decline to exercise its jurisdiction, pursuant to PKPA, 28 U.S.C. section 1738A(f) and (g).[4]

Assuming the District's continuing jurisdiction, under subsection (f), the District of Columbia court would have to *decline* to exercise its jurisdiction under subsection (f)(2) in order for Henrico County to modify the District's custody determination. The District of Columbia court has not declined to exercise its jurisdiction but instead continues to assert its jurisdiction. Thus, this Court must decide whether or not the Superior Court of the District of Columbia has "continuing jurisdiction" pursuant to section 1738A(d).

Subsection (d) of PKPA sets forth the requirements of continuing jurisdiction. It states, "The jurisdiction of a court which has made a child custody determination consistently with the provisions of the section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." The factual issue on which this matter turns is whether the District of Columbia "remains the residence" of Dr. Fernandez. The Court considered both oral testimony and exhibits filed by the parties in its resolution of this issue.

All three parties resided in the District until April, 1981 when Anthony was taken to Virginia. Ms. Maxie left the District of Columbia in November, 1981. There is no dispute regarding the fact that Dr. Fernandez remained in the District of Columbia until the fall of 1984.

■ The Court finds that Dr. Fernandez changed his residence in October, 1984 from the District of Columbia to the state of New York. This finding is based on the following evidence. First, Dr. Fernandez accepted a full-time position with United Air Lines in July, 1984. In October, 1984, he telephoned Ms. Maxie and informed her that he could no longer come to Richmond to pick up Anthony for weekend visits, refusing to give her an explanation. The record shows that there were no visitations between Anthony and Dr. Fernandez from September, 1984 until May, 1985. Next, there was evidence that from October 1984 until the present, Dr. Fernandez had no identifiable residence in the District of Columbia other than with friends or relatives, where he admittedly paid no rent. According to the testimony of Ms. Maxie and Anthony, Dr. Fernandez indicated to each of them that the New York apartment was his residence. Finally, when Anthony visited his father in July and August, 1985, he stayed in the New York apartment, which Anthony stated contained some of his belongings and toys.

Although Dr. Fernandez filed over thirty exhibits to demonstrate to the Court his having maintained a District of Columbia residence, their support of his position was marginal. From October, 1984 until March, 1985, there is only one document which was mailed to Dr. Fernandez at a District of Columbia address. The Court finds this time period to be critical for several reasons. In November, 1984, Ms.

4. (f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

Maxie filed in the District of Columbia Superior Court for child support arrearage owed by Dr. Fernandez. Then, in February, 1985, she began filing motions in order to have jurisdiction over child custody and support matters placed in the courts in Virginia. On February 19, she filed a motion to vacate the jurisdiction of the District of Columbia court. This was denied in March, 1985. On April 30, 1985, she filed a motion to dismiss for lack of jurisdiction and on May 22 she filed a motion for comity stay.

After Ms. Maxie began making these attempts to have jurisdiction vested in the Virginia courts, about March, 1985, Dr. Fernandez began to take steps to re-establish a residence in the District of Columbia. This was done by his making arrangements with friends first, and later with relatives, to use their respective addresses for the receipt of mail and for other purposes. The Court finds that Dr. Fernandez did this in an attempt to frustrate any exercise of jurisdiction by the Juvenile and Domestic Relations Court of Chesterfield or Henrico Counties in Virginia.

Therefore, I find that Dr. Fernandez changed his residence in October, 1984 from the District of Columbia to the State of New York. Beginning in March, 1985, Dr. Fernandez began trying to create evidence that his residence was still in the District of Columbia, despite the fact that when Anthony visited him in July and in August, 1985, Anthony was led to believe that the New York apartment where he stayed during the visit was his father's home.

The phrase "remains the residence" in 28 U.S.C. section 1738A(d) requires that the child or contestant *remain* a resident of the state or district. The word "remain" is defined as "to continue unchanged" in Webster's Ninth New Collegiate Dictionary. If the party attempting to "continue" jurisdiction in the original court leaves that jurisdiction, establishes residence elsewhere, and subsequently attempts to re-establish residence in the original court, then that party does not satisfy the requirement of subsection (d) that the state or district "remains the residence" of that party.

Therefore, Dr. Fernandez does not satisfy the residence requirement of section 1738A(d) for continuing jurisdiction in the District of Columbia Superior Court. For that reason, this Court declares that the proper jurisdiction to make custody determinations regarding Anthony is the Juvenile and Domestic Relations Court of the County of Henrico. This matter is remanded to that Court and the parties are permanently enjoined from bringing or participating in any custody proceeding relating to Anthony other than in the Juvenile and Domestic Relations Court for the County of Henrico.

During the course of the trial it was necessary to suspend proceedings because counsel for the litigants had not complied with local rules of court in preparing copies of exhibits. The Clerk's Office was required to cover this deficiency. To avoid a reoccurrence of this practice, the Court is backcharging counsel for the parties for this service. The amount is to be paid by counsel and is not to be passed on to their respective clients. According to the Clerk's Office, $66.00 is assessed against Mr. Anderson and $18.50 is assessed against Mr. Bricker.

An appropriate order shall enter.