764 A.2d 1042

**In re ADOPTION OF N.M.B.**

**Appeal of P.K.B.**

Supreme Court of Pennsylvania.

Argued March 6, 2000.

Decided Sept. 18, 2000.

118

---

Frederich Earl Liechti, for P.K.B., natural father.

David N. Dilettuso, for L.L., natural mother.

John R. Kardos, Pittsburgh, for N.M.B., minor child.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

In this matter we decide whether the courts below erred in refusing to decline jurisdiction to hear a Petition to Terminate Parental Rights of a biological father where he was paying child support pursuant to a previous custody, visitation and support order of a Texas court. For the reasons that follow, we reverse the decision of the Superior Court, vacate the order of the trial court, and relinquish jurisdiction to the courts of Texas.

### FACTS AND PROCEDURAL BACKGROUND

L.L. (Mother) and P.K.B. (Father) met in 1982 and began dating while Mother was a nurse and Father was a medical resident at a medical center in Houston, Texas. Mother moved to Lufkin, Texas to begin medical school in 1989 and on July 7, 1989, she gave birth to the couple's daughter, N.M.B (the child). Soon after the birth of the child, the couple apparently separated for a time but reunited and lived together in Lufkin, Texas while Mother was in her second year of medical school. By January of 1991, the couple had separated permanently. On March 25, 1991, a Texas court in Lubbock County entered a "Decree Granting Voluntary Legitimation," in which Father voluntarily acknowledged paternity and support was set at $736.00 per month ("Texas decree"). The Texas decree also set forth the custodial and visitation rights of Mother and Father regarding the child. In Texas, custody and visitation rights are delineated pursuant to a "Managing Conservatorship" and a "Possessory Conservatorship." Mother was appointed as the Managing Conservator and given primary custody rights. Father was appointed Possessory Conservator and given visitation and "access" rights.

For most of the time that Mother was in medical school, the child lived in Texas, but for a brief period, the child went to

live with her maternal grandmother in New York. Father stopped paying child support during the time that the child was in New York because, according to Father, Mother took the child from Texas without his knowledge or approval, which Mother disputes. Mother then sought the child support arrearage in the Texas court, which Father paid. Except for this ten month period, Father has consistently paid the child support obligation.

In February of 1992, Father married another woman, and, in March of 1992, Mother married another man (Stepfather). Following Mother's marriage, the child lived in Texas with Mother and Stepfather. Mother completed medical school in 1993 and for a time did an internship in New York. During her various moves, the record indicates that Mother informed the Texas court of her change of address in order to continue to receive child support pursuant to the Texas decree. In or about June of 1994, Mother began a medical residency in Allegheny County, Pennsylvania, again notifying the Texas court of her change of address. At all times, Father remained in Texas and paid child support pursuant to the Texas decree. In or about 1996, Father was divorced in Texas, and he testified that the Texas Court modified support governing the child, reducing it from $736.00 per month to $525.00 per month because of Father's divorce.

Since Mother and Father separated in 1991, Father has had only sporadic contact with the child. Father and Father's ex-wife testified at the termination hearing that Mother initially prohibited contact with the child and then requested that Father not assert his custodial rights to the child. Mother denied these averments. In any event, the record shows that Father visited with the child only once or twice in 1993. He also sent cards and presents during 1993. In July of 1994, he spoke to the Mother, but not to the child. Father claims that Mother did not want contact between him and the child and that Mother prohibited him from letting the child know that he was the Father. Father testified that he sent Christmas cards and gifts in December of 1995 and 1996. Father and Father's ex-wife claim that a gift was sent to the child in

December of 1996, an allegation Mother disputed. He also testified that he paid the child's medical bills whenever Mother submitted them to him, including an emergency room visit in 1995 or 1996.

In or about April of 1996, Father visited with the child when she accompanied Mother to Dallas, Texas for a job interview. Apparently, in 1996 and 1997 Mother had planned to return to Texas for a permanent job following her residency in Pittsburgh, and in briefs to this Court, the parties concede that Mother returned to Texas. Mother and Stepfather had another child in late 1996. In January of 1997, Mother filed, in the Court of Common Pleas of Allegheny County (trial court), a Petition to Terminate Parental Rights of Father, who continued to live in Texas and continued to make child support payments pursuant to the Texas decree. Father stopped making child support payments after receiving notice of the Petition to Terminate Parental Rights.

An evidentiary hearing was held in Pennsylvania on March 21, 1997. Father secured counsel and he and his ex-wife attended the hearing. At the conclusion of the matter, the trial court did not make a determination, but ordered that briefs be filed on April 21, 1997. Following the hearing, Father requested partial custody of the child for the weekend of March 28–31, 1997, in accordance with the Texas decree. The judge who held the termination hearing became ill while the matter was unsettled. Mother filed an emergency petition with another judge to prevent Father from having visitation of the child on the designated weekend, which the trial court granted. On April 14, 1997, Father then filed three motions: (1) Motion to Reopen the Record, (2) Motion to Enforce Texas Court Order, and (3) Motion to Apply the Law of Texas to the Dispute Regarding the Parental Rights Dispute. The focus of these motions was that Pennsylvania should decline jurisdiction because the Texas court had entered an initial order. Father also argued in these motions that if the Pennsylvania court exercised jurisdiction, the court should apply the law of Texas, which would not terminate a parent's rights if that parent were current in his support payments.

On October 27, 1997, the trial court entered an Order, which denied all three of Father's motions. On that same date, in a separate Order, the trial court granted (1) the Petition to Terminate Parental Rights on the basis that Father "has refused or failed to perform his parental duties" and (2) also ordered that Mother and Stepfather were awarded "custody" of the child. The trial court wrote a separate Opinion, also dated October 27, 1997. Father filed Exceptions, which were denied by an en banc trial court. He then appealed to the Superior Court. The Superior Court affirmed in a memorandum opinion that essentially adopted the analysis of the trial court.

## ANALYSIS

This matter involves the question of whether the Pennsylvania court had jurisdiction to hear Mother's Petition to Terminate Parental Rights where a Texas court had rendered a previous determination regarding Father's custody and visitation rights. In reaching our conclusion, we apply two statutes—Pennsylvania's Uniform Child Custody Jurisdiction Act, 23 Pa.C.S.A. §§ 5341–5366 (UCCJA) and the Federal Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1783A (PKPA), which contain specific provisions governing the jurisdiction of courts to entertain custody determinations.[1]

1. Distressingly, while both parties address the jurisdictional prerequisites of the UCCJA at Sections 5344 and 5355, neither party addresses the PKPA, a disturbing omission because this statute is a controlling authority regarding whether Pennsylvania has jurisdiction to modify the Texas decree. Ordinarily, this failure would result in our inability to address the matter, as it would be deemed waived. *E.g., Knarr v. Erie Insurance Exchange,* 555 Pa. 211, 723 A.2d 664, 666 (1999) (where parties fail to preserve an issue, the appellate court will not address it, even if the trial court is fundamentally wrong). However, while Father does not specifically address the PKPA, he at all times questioned whether the trial court should have declined jurisdiction. In that way, he raised the general issue of whether the trial court had subject matter jurisdiction to hear the Petition. Moreover, since this issue implicates the courts' *subject matter* jurisdiction to modify a Texas custody and visitation determination, this Court can raise the matter *sua sponte,* as it can not be waived. *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424 (1960) (matters of subject matter jurisdiction can never be waived). *See also, Barndt v. Barndt,* 397 Pa.Super. 321, 580 A.2d 320, 321 (1990)

As set forth by the United States Supreme Court in *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the UCCJA and the PKPA were enacted to avoid jurisdictional conflicts that existed between and among States regarding child custody matters. *Id.* at 180, 108 S.Ct. 513. Before these statutes were enacted, custody orders were routinely modified by non-issuing States, despite the dictates of the full faith and credit doctrine. This occurred either because the orders were not considered "final" or because the court that rendered the initial custody order retained the power to modify it; thus, the second State felt as entitled as the first to change the terms of the custody order.[2] As a result, the state of the law provided an incentive for a parent who lost, or anticipated losing, a custody battle in one State to abduct the child to another State in the hopes of getting a better result.

A number of States, including Pennsylvania in 1977, enacted the UCCJA in an attempt to resolve these jurisdictional battles. *Barndt v. Barndt,* 397 Pa.Super. 321, 580 A.2d 320 (1990). The UCCJA was meant to provide uniform standards to determine when a State had jurisdiction to make a custody determination and "obligated enacting States to enforce the determination made by a State with proper jurisdiction." *Thompson,* 484 U.S. at 181, 108 S.Ct. 513. However, the UCCJA was not entirely successful in that it did not provide a national standard because some States refused to enact the UCCJA and many others enacted it with their own modifications. *Id.* Thus, the jurisdictional disputes and incentive to move children across State borders in an effort to obtain a more favorable custody determination continued. Against this

(Superior Court *sua sponte* raised issue of subject matter jurisdiction per the PKPA); *Moore v. Richardson,* 332 Ark. 255, 964 S.W.2d 377 (1998) (jurisdiction per the PKPA is an issue of subject matter jurisdiction that cannot be waived by the parties or consented to by appearance in court); *Wambold v. Wambold,* 651 A.2d 330 (Me.1994) (PKPA involves questions of subject matter jurisdiction that can not be waived.)

2. The "Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the courts of the State in which the judgment was entered." *Thompson,* 484 U.S. at 180, 108 S.Ct. 513.

backdrop, Congress in 1980 enacted the PKPA and "sponsors and supporters of the Act continually indicated that the purpose of the PKPA was to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA." *Id.* Moreover, "one of the principle [sic] purposes of the PKPA was to protect the right of a decree issuing State to exercise exclusive continuing jurisdiction over its child custody orders .... and to channel litigation into the court having continuing jurisdiction." *Barndt,* 580 A.2d at 325.

With this brief overview in mind, we first look to Pennsylvania's version of the UCCJA as it relates to the dispute at issue. The UCCJA provides, at Section 5344, that a court in this Commonwealth has jurisdiction to hear a matter as follows:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) *is the home state* of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) *it appears that no other state would have jurisdiction* under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) Physical presence insufficient.—Except under subsection (a)(3) and (4), physical presence in this Commonwealth of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

(c) Physical presence unnecessary.—Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

23 Pa.C.S. § 5344 (emphasis added).

The UCCJA at Section 5355 provides further jurisdictional limitation when another State has issued an initial determination. Section 5355 states:

(a) General rule.—If a court of another state has made a custody decree, a court of this Commonwealth shall not modify that decree unless:

(1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this subchapter or has declined to assume jurisdiction to modify the decree; and

(2) the court of this Commonwealth has jurisdiction.

*(b) Consideration of out-of-State record.*—If a court of this Commonwealth is authorized under subsection (a) and section 5349 (relating to jurisdiction declined by reason of conduct) to modify a custody decree of another state, it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 5363 (relating to request for court records of another state).

23 Pa.C.S.A. § 5355.

In this matter, the trial court and the Superior Court determined that Pennsylvania had jurisdiction to decide the Petition to Terminate Parental Rights pursuant to Section 5344(a)(1)(*l* ) and Section 5355 of the UCCJA, finding that Pennsylvania was the home state of the child and that the Texas action was not "pending". There is no dispute that in this case Pennsylvania qualified as the child's "home state" because home state is defined in Section 5343 as the "state in which the child immediately proceeding the time involved lived with ... a parent ... for at least six consecutive months." However, the courts erred in concluding that they could freely modify an order of a previous court merely because the action was not "pending."

 Section 5355 of the UCCJA allows Pennsylvania to modify the Texas order only where Pennsylvania is the home state of the child *and* "it appears to the court of this Commonwealth that the court which rendered the decree ***does not now have jurisdiction.***" (Emphasis added). It is not entirely clear what this highlighted language in Section 5355 means, but the courts of this Commonwealth must read this provision in conjunction with the federal PKPA. The PKPA does not restrict the continuing jurisdiction of Texas to only those actions currently "pending." While the PKPA at Section 1783A(g) does prohibit the exercise of jurisdiction if another State's matter is pending, this is only one basis on which the PKPA prohibits the modification of an order.

The PKPA, 28 U.S.C.A. § 1783A(a), generally states that:

The appropriate authorities of *every State shall* enforce according to its terms, and *shall not modify* except as provided in subsections (f), (g), and (h) of this section, *any custody determination or visitation determination made consistently with the provisions of this section* by a court of another State.

(Emphasis added.) Subsections (f), (g), and (h) provide that:

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination.

28 U.S.C.A. § 1783A(f), (g), (h). The PKPA then makes it clear that a State "no longer has jurisdiction" if it has declined jurisdiction or does not have continuing jurisdiction pursuant to Section 1783A(d). Continuing jurisdiction is defined as:

The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section *continues as long as the requirement of subsection (c)(1) of this section continues to be*

*met and such State remains the residence of the child or of any contestant.*

28 U.S.C.A. § 1783A(d) (emphasis added).

Our interpretation of these above quoted provisions of the PKPA is that before the courts of this Commonwealth may assert jurisdiction over a child custody or visitation matter with interstate dimensions, the courts must engage in a multi-step analysis. First, the Pennsylvania court must decide whether the matter before it acts as a modification to a custody or visitation order of another State that was rendered "consistently with the provisions" of the PKPA. 28 U.S.C.A. § 1783A(a).[3] Assuming these conditions are met, the PKPA requires that then the Pennsylvania court must look to wheth-

---

**3.** The PKPA provides at subsection (c) the circumstances when a determination is entered in accordance with the PKPA, as follows:

(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C.A. § 1783A(c)

er it could, absent the out-of-state proceeding assert appropriate jurisdiction. 28 U.S.C.A. § 1783A(f)(1). If, as is the case before us, Pennsylvania is the "home state" of the child, the PKPA allows Pennsylvania to modify the other State's decree only if that other State "no longer has jurisdiction" or has declined jurisdiction. 28 U.S.C.A. § 1783A(f)(2), (h). The language, "no longer has jurisdiction" in Section 1783A(f)(2) and (h) should be read in conjunction with Section 1783A(d), *supra*, that specifies when a State has continuing jurisdiction. The PKPA provides that the other State would have "continuing jurisdiction" if the initial decree complied with the PKPA at the time the decree was rendered; if under that other State's law, the State maintains jurisdiction over the decree; and, the other State remained the residency of any of the parties at the time of the Pennsylvania proceeding. 28 U.S.C.A. §§ 1783A(d), 1783A(c)(1).

We now apply this analysis to the case at hand. First, we find that Mother's Petition to Terminate Parental Rights acted as a "modification" of a Texas custody and visitation decree and that the Texas decree was rendered in accordance with the PKPA. 28 U.S.C.A. § 1783A(a). Our determination incorporates the following conclusions based upon the record of the trial court: 1) the Texas decree was a custody and visitation determination and incorporated paternity, support, primary physical custody (in Texas analyzed per a Managing Conservatorship) and visitation (in Texas designated in the Possessory Conservatorship); 2) the Texas decree was rendered in accordance with the PKPA because the record evidence showed that, at the time of the 1991 Texas decree, Texas was the child's home state given that all parties had lived there since the child's birth in 1989; and, 3) the Petition to Terminate Parental Rights modified the Texas decree. The PKPA defines a "custody determination" as "a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C.A. § 1783A(b)(3). It defines visitation determination as "a judgment, decree, or other order of a court providing for the visitation of a child

and includes permanent and temporary orders and initial orders and modifications." 28 U.S.C.A. § 1783A(b)(9). It then defines a modification of either determination as essentially anything "which modifies, *replaces, supersedes,* or otherwise is made subsequent to, a prior custody or visitation determination concerning the same child, whether made by the same court or not." 28 U.S.C.A. § 1783A(b)(5) (emphasis added).

Given these broad definitions, in addition to those found in the UCCJA,[4] the termination petition filed by one parent against another parent so that a stepparent may adopt a child fits as a modification of a previous custody or visitation determination. The Petition to Terminate Parental Rights certainly would (and did) replace, supersede, and was subsequent to the 1991 Texas decree and affected Father's visitation and access rights. Thus, it met the PKPA definition of a modification. Indeed, it is hard to imagine any more of a modification to a custody and visitation determination than to terminate these rights altogether.

We now decide whether at the time Mother sought to terminate Father's rights, Texas had continuing jurisdiction of the Texas decree pursuant to Section 1783A(d), *supra.* As we set forth above, this requires determining whether the Texas decree complied with the PKPA at the time it was rendered, a finding we have already discussed above; whether one of the "contestants" was a resident of Texas at the time of the termination petition, which is undeniably the case here as the record clearly shows that Father has at all times remained in

4. A "custody decree" is defined in the UCCJA at Section 5343 as "a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." "Custody determination" is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights. The term does not include a decision relating to child support or any other monetary obligation of any person." "Custody proceeding" is defined to include "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." 23 Pa.C.S.A. § 5343.

Texas; and whether under Texas law, Texas maintains jurisdiction over the decree. 28 U.S.C.A. §§ 1783A(d), (c)(1).

Our analysis of the laws of Texas at the time Mother sought to terminate Father's rights to the child indicate that Texas maintained continuing jurisdiction to modify its 1991 Order regarding the child's Possessory Conservatorship and support. In *Phillips v. Beaber*, 995 S.W.2d 655 (Tex.1999) the Texas Supreme Court stated that in matters where a child had acquired a new "home state," the courts of Texas relinquish jurisdiction over the Managing Conservatorship (primary custody), but retain jurisdiction over matters involving the Possessory Conservatorship. *See also Allison v. Allison*, 3 S.W.3d 211 (Tex.Ct.App.1999). As further explained by the *Allison* court:

> Texas courts have consistently distinguished between "custody" and "visitation" for jurisdictional purposes. According to these courts, the Texas Legislature has determined that "when the child has resided in another state for the six months prior to the proceeding," the other state has become the new "home state" and Texas no longer has jurisdiction over "custody." "Custody" is defined in the Texas Family Code as "managing Conservatorship of a child." "Visitation" is separately defined as "possession of or access to a child." The courts have noted that "the exception to continuing jurisdiction in the Family Code mentions only 'custody' and does not include 'visitation.'" The courts have concluded that the Legislature has distinguished the term "custody" from the term "custody determination," which is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights, but does not include a decision relating to child support or any other monetary obligation of any person." Thus, had the Legislature intended to include visitation within the exception to Texas's continuing jurisdiction, "it would have either used the term 'custody determination' or it would have included the word 'visitation.'" ***Therefore, Texas "retains power to modify all aspects of its decree***

*except for managing conservatorship."*[5] *This ensures that "the 'left-behind' parent is . . . assured of access to the Texas court for modification of visitation and of the child support obligation."*

3 S.W.3d at 214 (citation omitted) (emphasis added). *See also Welborn–Hosler v. Hosler,* 870 S.W.2d 323 (Tex.App.1994).

■ From these cases, we interpret that Texas law provides for continuing jurisdiction over its child visitation, support and other orders relating to a non-custodial parent's rights of "access" to the child, as long as one of the contestants remains a resident of Texas.[6] This would seem particularly true here because Father is the "left behind" parent trying to protect his rights to the child, and Texas courts have indicated specifically that the policy behind its retention of jurisdiction is to protect the non-custodial parent's rights to the child. *Hosler,* 870 S.W.2d at 327. To reiterate, we find it difficult to imagine any determination that would affect Father's rights of access to his child more than a termination of his parental rights, which would necessarily cut off all of his Possessory Conservatorship (i.e., visitation) rights. We thus conclude that, pursuant to the specific facts in this case, the Texas courts would find that Father's Possessory Conservatorship was implicated and therefore, Texas had continuing jurisdiction pursuant to the PKPA. *See also In re L.S.,* 943 P.2d 621 (Ok.1997).[7]

**5.** Note that "managing conservatorship" refers to primary custody rights.

**6.** We note that we reach this conclusion by looking to the time period of January of 1997, the time the Petition was filed and when Pennsylvania was the "home state" of the child. However, at the time of argument of this matter, the parties concede that Mother, the child and Stepfather are no longer within the jurisdiction of Pennsylvania and this Commonwealth is no longer the "home state" of the child. From the record and briefs before us, it appears that they have returned to Texas, and thus, Texas at some time after the Petition was filed, again became, and is currently, the "home state" of the child.

**7.** In *LS,* a case nearly identical to this one, a biological father and his new wife filed a petition to terminate parental rights of a child's biological mother, a resident of Texas, so that the stepmother could adopt the child. The petition was filed in Oklahoma, the child's "home state" pursuant to Oklahoma's version of the UCCJA. The Oklahoma

We look now to whether there is any indication that Texas declined jurisdiction. From the record, it appears that it did not. The trial court in Pennsylvania never communicated with any court in Texas regarding whether Texas would decline jurisdiction. Further, at the termination hearing, it was established that Father continued to pay support pursuant to the Texas decree through the time the Petition to Terminate Parental Rights was filed and Mother reported her change of address to the Texas court each time she moved, including while she was in New York and Pennsylvania. In addition, the Texas court modified its decree regarding support in 1996 after Father's divorce. Instead of establishing that Texas declined jurisdiction, the Record shows that Texas continued to exercise jurisdiction.

## CONCLUSION

For the reasons we have set forth above, we hold that the trial court did not have subject matter jurisdiction to hear the Petition to Terminate Parental Rights where Father, at all relevant times, was a resident of Texas and where, under Texas law and the PKPA, the Texas court retained exclusive continuing jurisdiction over the Possessory Conservatorship (i.e., Father's right to visitation and access to the child) set forth in the Texas decree. We thus reverse the decision of the Superior Court, vacate the order of the trial court, and relinquish jurisdiction to the courts of Texas.

Justices CAPPY and SAYLOR concur in the result.

Supreme Court ruled that the courts of Oklahoma did not have subject matter jurisdiction to hear the termination petition because it acted as a modification to a prior custody order entered in Texas after father and mother's divorce. Oklahoma found Texas had exclusive continuing jurisdiction that ended only if the mother moved away from Texas.