**Brown v. Brown**

C.P. of Berks County, no. 03-15613.

*Cheryl Lee Brown,* pro se.
*Thomas M. Binder,* for defendant.

LASH, *J.,* September 28, 2004—The matters before this court are the preliminary objections of defendant, Christopher Todd Brown (Father), pursuant to Pa.R.C.P. 1915.5(a), challenging the jurisdiction of this court to hear the above-captioned child custody action. Father alleges that the State of Ohio has continuing jurisdiction over the child custody dispute and that, therefore, this court should decline jurisdiction. Argument was held on September 3, 2004, at which time the parties stipulated to the facts set forth in the briefs filed by the parties. Upon consideration, this court overrules the preliminary objections and assumes jurisdiction over this matter.

The parties, formerly married but now divorced, resided in Pennsylvania and Ohio at various times. At the time of their marriage on August 3, 1996, they resided in Berks County, Pennsylvania, remaining in Berks County until some time in 1998. While in Berks County, plaintiff, Cheryl Lee Brown (Mother), gave birth to the parties' minor child, Mariah Nichole Brown, born July 22, 1997.

Sometime in 1998, the parties moved to Ohio. They resided in Ohio until either late 1998 or early 1999, when the parties returned to Pennsylvania. They resided in Pennsylvania until February or March of 2001, when they returned to Ohio. In May 2001, the parties separated, but both parties continued to reside in Ohio. On or about June 28, 2001, Father filed a divorce complaint with the court of Montgomery County, Ohio.

While the Ohio divorce action was still pending, both parties, around January or February of 2002, independently moved back to Pennsylvania. Subsequently, on or about May 24, 2002, the Court of Common Pleas of Montgomery County, Ohio, entered a final judgment and decree of divorce.[1] In the judgment and decree, the Ohio court included the following language regarding child custody:

"(9) Allocation of parental rights and responsibilities: The plaintiff/father shall be designated as residential parent and legal custodian. The mother shall have parenting time with the minor child pursuant to this court's standard order of visitation. The court retains jurisdiction over this issue.

"(10) Primary residence of children for school district designation: The father's residence is hereby designated as the residence for school district purposes. . . .

"(14) Out of state relocation: Neither parent shall relocate the children out of state without first obtaining a modified visitation order. The parties may submit an agreed order modifying visitation with a provision for allocation of transportation expenses, to the court for adoption by the court as an order. If the parents are un-

---

1. Docket no. 01-LS-25.

able to agree, the moving parent shall, prior to relocation, (1) file a motion asking the court to modify the visitation schedule, (2) set a hearing, and (3) obtain a modified visitation order. No continuance of the hearing shall be granted without written permission of the assigned judge."

Both parties continued to reside in Pennsylvania, with Father having primary custody of the minor child pursuant to the Ohio court order, until December 20, 2003, when Father moved back to Ohio, taking the minor child with him. Mother then filed the within action on December 24, 2003, requesting primary physical custody of the minor child. Father responded by filing preliminary objections, which are now before this court.

In determining jurisdiction, this court must review and apply two statutes, Pennsylvania's Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. §§5341-5366 (UCCJA), and the Federal Parental Kidnapping Prevention Act, 28 U.S.C. §1738A (PKPA). Further, our analysis is governed by the method established by the Pennsylvania Supreme Court in *In re Adoption of N.M.B.,* 564 Pa. 117, 128-29, 764 A.2d 1042, 1047-48 (2000), as follows: "before the courts of this Commonwealth may assert jurisdiction over a child custody or visitation matter with interstate dimensions, the courts must engage in a multi-step analysis. First, the Pennsylvania court must decide whether the matter before it acts as a modification to a custody or visitation order of another state that was rendered 'consistently with the provisions' of the PKPA. 28 U.S.C. §1738A(a). Assuming these conditions are met, the PKPA requires that then the Pennsylvania court must look to whether it could, absent the out-of-state proceeding assert appropriate jurisdiction. 28 U.S.C. §1738A(f)(1). If,

. . . Pennsylvania is the 'home state' of the child, the PKPA allows Pennsylvania to modify the other state's decree only if that other state 'no longer has jurisdiction' or has declined jurisdiction. 28 U.S.C. §1738A(f)(2), (h). The language, 'no longer has jurisdiction' in section 1738A(f)(2) and (h) should be read in conjunction with section 1783A(d), *supra,* that specifies when a state has continuing jurisdiction. The PKPA provides that the other state would have 'continuing jurisdiction' if the initial decree complied with the PKPA at the time the decree was rendered; if under that other state's law, the state maintains jurisdiction over the decree; and, the other state remained the residency of any of the parties at the time of the Pennsylvania proceeding. 28 U.S.C. §§1738A(d), 1738A(c)(1)." (footnote omitted)

The first prong of the test, that Mother's custody complaint seeks modification of the custody order of Ohio, is clearly met. Both parties having returned to Pennsylvania before entry of the Ohio order, they were unable to comply with the terms of modification which required the parties to obtain a modified visitation order before relocating to another state. Additionally, neither party filed any subsequent motions after the order was entered. Thus, the order was never modified even though the parties resided in Pennsylvania for a substantial time. The Ohio order still exists and remains in full force and effect. Mother's action in filing a custody proceeding in this jurisdiction and requesting primary physical custody of the minor child is for the express purpose of modifying the terms and conditions of the Ohio order.

The next determination is whether the Ohio order was valid under the PKPA. If so, the order may not be modified by Pennsylvania unless certain conditions are met.

28 U.S.C. §1738(A)(a).[2] The applicable provision is 28 U.S.C. §1738A(c) which states:

"(c) A child custody determination made by a court of a state is consistent with the provisions of this section only if—

"(1) such court has jurisdiction under the law of such state; and

"(2) one of the following conditions is met:

"(A) such state (i) is the home state of the child on the date of the commencement of the proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from such state because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such state;

"(B)(i) it appears that no other state would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such state assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such state other than mere physical presence in such state, and (II) there is available in such state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

---

2. The conditions for modification are set forth in 28 U.S.C. §1738A(f) which states:

"(f) A court of a state may modify a determination of the custody of the same child made by a court of another state, if—

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

"(C) the child is physically present in such state and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child . . . has been subjected to or threatened with mistreatment or abuse;

"(D)(i) it appears that no other state would have jurisdiction under subparagraph (A), (B), (C), or (E), or another state has declined to exercise jurisdiction on the ground that the state whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section."

Whether Ohio had jurisdiction as required by section 1738(A)(c)(1) was answered affirmatively by the Ohio court, as evidenced by its proceeding to disposition and its entry of the final judgment and decree of divorce on May 24, 2002. This court's review of the facts known to it and the applicable provision of Ohio's version of the UCCJA[3] (Ohio UCCJA) discloses that the parties could not establish Ohio as the home state[4] of the child at the time of commencement of the proceeding, for the parties and the child had only lived in Ohio for three or four months when Father filed his complaint. However, the Ohio UCCJA also permits jurisdiction to be established when:

---

3. R.C. 3109.22(A).

4. The pertinent provisions of R.C. 3109.21(A) defines "home state" to mean the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months.

"It is in the best interests of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with the state, and there is available in the state substantial evidence concerning the child's present or future care, protection, training and personal relationships." R.C. 3109.22(A)(2).

Jurisdiction on the basis of establishing a "significant connection," as an alternative to establishing "home state," contemplates that there may be no state which qualifies as a home state under the facts and circumstances, or if there is another state that would qualify as the home state, that nevertheless, another state has "significant connections" and therefore may be in a better position than any other court to decide the merits of the case.

In determining whether the child has a "significant connection," the Ohio courts consider such factors as where the child and the parties are currently residing, where the child would be attending school, and which state will be the forum for the child's present and future care, protection, training and personal relationships. See *Esaw v. Esaw,* 2003 W.L. 21504116 (Ohio App. 7th Dist.).

In *Esaw,* the mother and the child both resided in Illinois, while father resided in Ohio and enjoyed custody time with the child during the summer months. The court found that the time the child spent with father in Ohio and the fact that father was seeking primary custody and could present evidence in Ohio concerning the child's present and future care, protection, training and personal relationships, was sufficient to establish significant connections.

In *In re Rayl,* 7th Dist. no. 00-BA-55, 2002-Ohio-5176, the mother, who was the primary custodian of the child and resided in West Virginia, permitted the child to move in with his half brother in Ohio. The move was necessitated by mother being unable to establish a permanent residence and because the child was becoming a disciplinary problem. Shortly after the child's relocation took place, the half brother filed a custody action in Ohio. In finding Ohio had jurisdiction, the court stated:

"The minimum qualifications of this provision have certainly been met in this case. 'First, the minor child is currently within the borders of the state. Secondly, the child has substantial connections with the state as he is attending school in Ohio. As appellee wishes to have the child live with him in Ohio, it is the forum which contains evidence concerning the child's present and future "care, protection, training and personal relationships." While there is evidence regarding the child's past care and education in West Virginia, the statute specifically addresses evidence regarding the child's present and future care, not the child's past living environments. Moreover, this evidence can be relocated for use in an Ohio court. . . . Since both appellee and his wife are residents of Ohio and intend to remain in the state, appellee certainly meets the necessary "significant connection" requirements of R.C. 3109.22.' "*Rayl* at 16-19.

As already stated, the parties moved back and forth from Ohio to Pennsylvania on several occasions. As a result, at various times, they created and maintained substantial ties and relationships in both states. At the time of commencement of the Ohio proceeding, both parties and the minor child were residing in Ohio. Father's parents continue to reside in Ohio. The purpose for moving

back from Pennsylvania was to obtain a fresh start, for the lifestyle in Pennsylvania had become, according to Father, "dangerous and dysfunctional." Even when the parties separated in May of 2001, Mother continued to reside in Ohio until early 2002. The connections established for this period of time were substantial.

Further, Pennsylvania did not have jurisdiction as of June 2001 for neither party resided in Pennsylvania when the Ohio action was commenced, nor was Pennsylvania the home state when the proceeding was commenced.[5] Additionally, it would have been difficult for the parties to process a divorce and custody action in Pennsylvania while they continued to reside in Ohio. Custody actions often require an examination of the child by a professional, which would not have been feasible in Pennsylvania. Finally, by the time Mother returned to Pennsylvania, enough time had lapsed that Ohio could have established home state jurisdiction. Accordingly, this court finds that it was appropriate for the Ohio court to assume jurisdiction.

We make the same determination in our analysis of section 1738A(c)(2) of the PKPA. Similar to the Ohio UCCJA, subsection (B)(ii) of the PKPA allows jurisdiction to be met if a party can establish that the child and at least one party have a significant connection with Ohio. Subsection (B)(i), however, also requires an additional element, that "no other state would have jurisdiction under subparagraph (A)."

---

5. This ruling stems from the same reasoning relied on in our determination that, as of June 2001, Pennsylvania did not qualify as a home state under PKPA, *infra.*

This element is also met. First, subparagraph A(i) does not qualify Pennsylvania for jurisdiction. On June 28, 2001, the date of commencement of the proceedings, Pennsylvania did not meet the PKPA definition of home state, for it was not the home state at that time. 28 U.S.C. §1738A(b) defines "home state," in pertinent part, as follows:

"(4) 'home state' means the state in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, . . . ."

As of June 28, 2001, the minor child had already been residing in Ohio for at least three months. The word "immediately" is defined as "without interval of time."[6] The interval contemplated by the word "immediately" must therefore be a time of short duration, as in days or perhaps weeks. The interval contemplated could be of a length sufficient to permit the parties to obtain an attorney and file an action to seek relief from a court on child custody and jurisdictional questions. However, the three- to four-month interval from the time the parties and the minor child moved from Pennsylvania is well in excess of what is necessary to file an action, and cannot be considered to be "immediately preceding the time involved."

Secondly, to qualify under subsection A(ii), one parent must be living in Pennsylvania as of June 28, 2001, which was not the case.

Pennsylvania could not establish jurisdiction under subparagraph (A) as of June 28, 2001. As such, no state other than Ohio had jurisdiction as required by section 1738A(c)(2)(B). The requirements of section 1738A(c)

---

6. Webster's Ninth New Collegiate Dictionary, 1984 at 601.

(2) are met and the Ohio court order is deemed consistent with the PKPA.

We turn then to the central issue of the case, whether the petition to modify filed by Mother in Pennsylvania can be entertained by this court, in light of the existence of a valid Ohio order which expressly retains jurisdiction over the matter. Section 5355 of the Pennsylvania UCCJA provides the basis for Pennsylvania to modify a custody decree of another state. That section states, in pertinent part:

"(a) If a court of another state has made a custody decree, a court of this Commonwealth shall not modify that decree unless (1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this subchapter or has declined to assume jurisdiction to modify the decree and (2) the court of this Commonwealth has jurisdiction."

Mother filed the within petition on December 24, 2003. Only four days earlier, Father and the minor child had relocated to Ohio. Prior to relocation, both parties and the minor child had lived in Pennsylvania for almost two years. As such, Pennsylvania meets the jurisdictional requirements as the home state of the minor child. 23 Pa.C.S. §5344(a)(1) establishes:

"(a) A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) this Commonwealth (i) is the home state of the child at the time of commencement of the proceeding; or (ii) had been the home state of the child within six months before commencement of the proceeding and the child is

absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth; . . . ."

We also note that Father does not dispute Pennsylvania's status as home state.

Accordingly, Pennsylvania would have the authority to modify the Ohio order if Ohio "does not now have jurisdiction." 23 Pa.C.S. §5355(a)(1). In *In re Adoption of N.M.B.*, the Pennsylvania Supreme Court instructs that this provision must be read in conjunction with the PKPA.[7] The court goes on to say that Ohio would have "continuing jurisdiction" if: (1) the initial decree complies with the PKPA at the time the decree was rendered, (2) under Ohio law, Ohio maintains jurisdiction over the decree, and (3) Ohio remained the residency of any of the parties at the time of the Pennsylvania proceeding.[8] 28 U.S.C. §§1738A(d), 1738A(c)(1).

For reasons already set forth, Father can establish that Ohio's initial decree complied with the PKPA at the time the decree was rendered. However, he is unable to establish either of the other two prongs of the test.

Ohio could not maintain jurisdiction because the contact with the parties had ended. Because of the parties' two-year removal from Ohio, Ohio does not qualify as the home state. Secondly, neither the minor child nor at least one contestant has a significant connection with Ohio, sufficient to establish jurisdiction under section 3109.22(A)(2), in the same manner jurisdiction was established at the time of the initial decree. There is noth-

---

7. 764 A.2d at 1047.
8. 764 A.2d at 1048.

ing in the record that provides "substantial evidence concerning the minor child's present or future care, protection, training and personal relationship." R.C. 3109.22 (A)(2). Father moved with the minor child approximately four days before Mother filed the within petition. While Father reestablished himself in Ohio, enrolled the minor child in school, and began acquiring other connections with Ohio, this is not sufficient. This case is distinguished from *Rayl, supra,* for in *Rayl,* the mother had initially agreed to the child moving to Ohio, and only objected when the half brother sought custody through a court action. Here, Father's action was unilateral, uprooting the minor child from her home in Pennsylvania without Mother's consent. Further, Father cannot rely on the past contacts, as the parties and the minor child had resided in Pennsylvania for a substantial time after those contacts were abandoned. The only remaining contacts would be Father's family.

Father relies on the language of the Ohio order in which the Ohio court, by agreement of the parties, expressly retained jurisdiction over the child custody issue. However, if Ohio does not have subject matter jurisdiction, said jurisdiction cannot be conferred upon Ohio by agreement or consent of the parties. *Golindo v. Delossantos,* 2004 W.L. 1433539 (Ohio App. 3 Dist.).

Even if Father could present sufficient evidence to establish a significant connection with Ohio, he does not meet the third prong in the test, as neither of the parties remained a resident of Ohio. The ruling of the Supreme Court of Ohio in *The State ex rel. Seaton v. Holmes,* 100 Ohio St.3d 265, 798 N.E.2d 375 (2003), is dispositive. There, the court, reviewing similar facts, defines the word "remains" under the PKPA and held as follows:

"The word 'remains' in section 1738A(d) of the PKPA 'is defined by the dictionary.' See *e.g., In re Marriage of Pedowitz* (1986), 179 Cal.App. 3d 992, 1001, 225 Cal.Rptr. 186. See also, *Maxie v. Fernandez* (E.D.Va. 1986), 649 F. Supp. 627, 631; cf. *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889 (court construes undefined statutory language according to rules of grammar and common usage by consistently using dictionary definitions). After applying the applicable rules of construction, we determine that the word 'remain' means 'to stay in the same place' and 'to continue unchanged in form, condition, status, or quantity.' Webster's Third New International Dictionary (1971) 1919.

"Ohio was the residence of both parents and the child when they agreed to terms that were subsequently incorporated into the original divorce decree. But all of them moved to Missouri. Although Aaron later moved back to Ohio, he did not thereby confer continuing jurisdiction on the Ohio court. His status as an Ohio resident did not 'continue unchanged' from the issuance of the divorce decree until the present. In fact, according to Rachelle's uncontroverted affidavit, Aaron has expressed his intent to continue residence in Missouri and doubts the likelihood of further proceedings in Ohio.

"Therefore, under the PKPA, Ohio lacks jurisdiction over Aaron's postdecree motions. In other words, '[i]f the party attempting to "continue" jurisdiction in the original court leaves that jurisdiction, establishes residence elsewhere, and subsequently attempts to reestablish residence in the original court, then that party does not satisfy the requirement of subsection (d) that the state or district "remains the residence" of that party.' *Maxie,* 649 F. Supp. at 631, . . . ." 798 N.E.2d 377-78.

Ohio does not now have jurisdiction. Pennsylvania is the only state with jurisdiction and accordingly, Father's preliminary objections must be overruled. Accordingly, we enter the following order:

ORDER

And now, September 28, 2004, upon consideration of the preliminary objections of defendant, Christopher Todd Brown, pursuant to Pa.R.C.P. 1915.5(a), response thereto, briefs filed by the parties, and after argument held, the preliminary objections are overruled. This matter shall be referred to the child custody master for a conciliation conference and further proceedings.