In re Phyllis A. SAUNDERS, Aikeem Green, Alaya Green, Andre Green, by Their Parent and Natural Guardian, Sandra Green and Sandra Green, in Her Own Right

v.

Ellen JENKINS and Hertz Corporation.

Tiffany L. FULTON, a Minor, by Her Parents and Natural Guardians, Renaldo FULTON and D. Tina Fulton, h/w and Renaldo Fulton and D. Tina Fulton, h/w, Individually and in Their Own Right

v.

Phyllis A. SAUNDERS, Ellen Jenkins and Hertz Corporation.

Randel LINDER, Aunt for the Purpose of this Litigation, Guardian of Minors, David Linder, Samantha Jenkins, and Ellen Linder, and Minor Plaintiffs, David Linder, Samantha Jenkins and Ellen Linder, in Their Own Right

v.

Ellen JENKINS, Phyllis A. Saunders, and the Hertz Corporation, Appellees.

Appeal of the HERTZ CORPORATION.

Superior Court of Pennsylvania.

Argued July 14, 1998.
Filed Sept. 3, 1998.

Martha E. Johnson, Philadelphia, for appellant.

William E. Averona, Philadelphia, for Phyllis A. Saunders, Aikeem, Alaya and Andre Green, by Their Parent and Natural Guardian, Sandra Green, appellees.

Paul L. Herron, Philadelphia, for Tiffan L. Fulton, by Her Parents and Natural Guardians, Renaldo And D. Tina Fulton, appellees.

Before KELLY and JOYCE, JJ., and CERCONE, President Judge Emeritus.

JOYCE, Judge.

This is an appeal from the final judgment of the trial court which found for Appellees on the issue of liability. For the reasons set forth below, we reverse and remand. The relevant facts and procedural history of this case are as follows.

Appellee, Phyllis Saunders, accompanied by Ellen Jenkins, an additional defendant in this suit, and Bertha Young went to Hertz Corporation's rental location in the Philadelphia International Airport on July 25, 1991 at approximately 10:30 a.m. in order to rent a van to drive to North Carolina for a church function. Saunders handled all the negotiations on behalf of the group and Jenkins signed the rental agreement as an authorized driver. Pamela Hagood was the Hertz rental agent handling the transaction. Saunders initialed the Hertz rental agreement accepting the Loss Damage Waiver Insurance (LDW) and declining the Liability Insurance Supplement (LIS), Personal Accident Insurance (PAI) and Personal Effects Coverage (PEC). Saunder's signed the agreement at the end.

Jenkins fell asleep at the wheel of the vehicle while traveling in Virginia causing the accident in which the eleven (11) occupants, three (3) adults and eight (8) children, sustained injuries. Saunders and the other occupants of the vehicle instituted an action against the Hertz Corporation, Appellant, and Ellen Jenkins. Appellees sought to recover excess liability insurance and underinsurance coverage in addition to the basic coverage, which is not disputed. The LIS provides additional liability insurance for third-party claims in the amount of $1,000,000 single limit and $100,000 underinsured motorist coverage. The basis of Appellees' action was their contention that Appellant was required to meet various statutory notice provisions once they chose to offer the additional coverage provided within the LIS.

The actions by the various Appellees were consolidated for discovery and trial by stipulation filed March 22, 1994. The trial was bifurcated and proceeded solely on the issue of liability in December of 1996. Following the non-jury trial, the trial court found Appellant, Hertz, liable to Appellees up to the maximum of the liability insurance supplement despite Appellees' declination of such coverage at the time of the rental agreement.

Appellant filed post-trial motions on March 21, 1997 raising the issue of whether the trial court erred in disregarding their self-insured status under Pennsylvania statute and requiring Hertz to comply with provisions applicable to insurance companies selling primary insurance policies. The trial court denied the motion on July 15, 1997. On August 19, 1997, the court amended its March 21, 1997 order to reflect that it was subject to immediate appeal based on a controlling question of law. This Court denied the petition for appeal on October 21, 1997, following which the parties stipulated to the amount of damages. The trial court entered a final judgment on December 17, 1997. This timely appeal followed.

The sole issue raised for our review is whether the trial court erred in concluding that Hertz, a self-insured entity, effectively lost its self-insured status by offering the optional LIS coverage to its rental customers and therefore was required to comply with the notice and rejection provisions applicable to insurance carriers offering primary coverage under the Motor Vehicle Financial Responsibility Law (MVFRL). Appellant argues that as a self-insured entity, it did not have to meet the statutory requirements mandated by the MVFRL. We are inclined to agree.

In Pennsylvania, it is necessary to provide proof of financial responsibility by submitting that either a policy for motor vehicle liability insurance exists, a program of self-insurance applies or other acceptable financial arrangements exist. *See* 75 Pa.C.S.A. § 1782. The statute regarding self-insurance provides:

§ 1787 Self-insurance

(a) General rule.—Self insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist

such as will satisfy the department that the self-insurer will:

(1) Provide the benefits required by section 1711 (relating to required benefits), subject to the provisions of Subchapter B (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to availability of benefits) and 1715 (relating to availability of adequate limits).

(2) Make payments sufficient to satisfy judgments as required by section 1774 (relating to payments sufficient to satisfy judgments).

(3) Provide uninsured motorist coverage up to the limits set forth in section 1774.

75 Pa.C.S.A. § 1787.

■ While acknowledging that Appellant meets the statutory definition of a self-insurer, Appellees argued and the trial court found that Appellant is not a "classic" self-insurer and by offering optional excess coverage has subjected itself to the provisions contained within the MVFRL.[1] This statute, primarily 75 Pa.C.S.A. § 1791 and 1791.1, mandates a certain manner in which to notify the insured of the various coverage available and in relevant parts read:

§ 1791 Notice of available benefits and limits

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of the application for original coverage, and no other notice or rejection shall be required:

### IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle. . . .

§ 1791.1. Disclosure of premium charges and tort options

(a) Invoice.—At the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured an itemized invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The invoice must contain the following notice in print of no less than ten-point type:

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. . . .

■ The principles governing statutory construction apply in our review. Our object is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). When the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning. 1 Pa.C.S.A. § 1921(b); *Commonwealth v. Burnsworth*, 543 Pa. 18, 24, 669 A.2d 883, 886 (1995). In attempting to ascertain the meaning of a statute, we must consider the intent of the legislature and examine the practical consequences of a particular interpretation. *Commonwealth v. Davis*, 421 Pa.Super. 454, 458–60, 618 A.2d 426, 428 (1992), *appeal denied*, 535 Pa. 630, 631 A.2d 1004 (1993). We presume the legislature did not intend a result that is absurd and unreasonable. *Id.* In construing legislative intent, this Court may look to the occasion and necessity of a statute, the circumstances in which it was intended, the mischief to be remedied, the object to be attained by the law, former law on the same subject and the consequences of a particular interpretation. *Id.*

---

1. Although sympathetic to Appellees' argument and the trial court's determination, matters regarding the definition of statutory terms are within the sole province of the Legislature, and we are not permitted to create new designations.

**564**

In this case the statutory provisions are clear. The notice provisions would only apply were we to find that Appellant, Hertz, was not acting in its capacity as a self-insured entity when it offered the additional coverage delineated within their rental agreement packet. We have been faced with a similar challenge to the applicability of the MVFRL to a self-insured entity when it offered but failed to comply with the offering and/or rejection requirements found in 75 Pa.C.S.A. § 1731 pertaining to coverage for underinsured motorists. Critically, this Court determined "[s]ection 1787 requires self-insurers to provide required benefits, as well as uninsured motorist coverage however, it does not require underinsured motorist coverage." *Ingalls v. Hertz Corp.*, 453 Pa.Super. 415, 417–18, 683 A.2d 1252, 1253 (1996) (citations and quotation marks omitted). Furthermore, "[s]ection 1787 is the only section of the MVFRL which defines the benefits for which a self-insured entity is liable, therefore, it is that section which must be looked at to determine the benefits a self-insurer must pay." *Id.*

Appellees concede that a self-insured entity is not required to offer the additional coverage provided by the LIS. However, Appellees argue and the trial court determined that when a self-insurer offers such coverage, it must comply with the notice provisions within 75 Pa.C.S.A. § 1791 and § 1791.1. This position cannot be supported as it has been rejected time and again. Act of February 7, 1990, P.L. 11, No. 6, of which § 1791 and § 1791.1 are a part, does not refer or apply to self-insurers. *Gutman v. Worldwide Insurance Co.*, 428 Pa.Super. 309, 630 A.2d 1263 (1993). Even though the optional coverage contested in the case at bar is the LIS and not the underinsured coverage, we must similarly conclude that this optional benefit is not subject to the requirements of notice and rejection that an insurance company must meet. Accordingly, we must reverse and remand the judgment of the trial court which found Hertz liable for the excess coverage rejected by Appellees with instructions to enter judgment in favor of Appellant.

Judgment reversed. Remanded for proceedings consistent with this discussion. Jurisdiction relinquished.