Sharmetha SMITH and Vanessa Smith,

v.

ENTERPRISE LEASING COMPANY OF PHILADELPHIA t/a Enterprise Rent–A–Car, Reginald Drummond and Evangeline Drummond.

Appeal of: Enterprise Leasing Company of Philadelphia, t/a Enterprise Rent–A–Car.

Superior Court of Pennsylvania.

Argued May 7, 2003.

Filed Sept. 24, 2003.

Christopher J. Pakuris, Philadelphia, for appellant.

Edwin P. Smith, Philadelphia, for appellee.

Before: DEL SOLE, P.J., JOHNSON and BECK, JJ.

BECK, J.

¶ 1 This is an appeal from the grant of partial summary judgment [1] in favor of plaintiffs-appellees Sharmetha Smith and Vanessa Smith and against defendant-appellant Enterprise Leasing Company of Philadelphia, t/a Enterprise Rent–a–Car. The issue is whether Enterprise, a self-insured entity, must pay to the Smiths, renters of an Enterprise vehicle, uninsured motorist (UM) benefits pursuant to the terms of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7 (Purdon 1996). The trial court held that Enterprise owed

---

1. The appeal is properly before us. The trial court granted partial summary judgment on the legal issue of insurance coverage, and the matter proceeded to arbitration on the factual question of damages. After an appeal of the arbitration award and a request for a trial *de novo*, the parties ultimately stipulated to damages in the amount of $14,000, and this timely appeal on the legal question followed.

such coverage to the Smiths as a matter of law. We disagree, and reverse.

¶ 2 In this appeal from a grant of summary judgment, we must determine whether the moving party established that there was no genuine issue of material fact, and that judgment should be entered as a matter of law. *Nelson v. Heslin,* 806 A.2d 873 (Pa.Super.2002); *Lange v. Burd,* 800 A.2d 336 (Pa.Super.2002). With this standard of review in mind, we consider the following facts.

■ ¶ 3 Plaintiff-appellee Sharmetha Smith signed a contract when she rented a vehicle from Enterprise. Her signature on the contract appeared under the following printed terms: "I have read and agree to the terms and conditions on both sides of this agreement." The reverse side of the contract contained the following language, under the heading "RENTAL AGREEMENT: TERMS AND CONDITIONS":

**REJECTION OF UNINSURED MO-TORIST PROTECTION.**

I AM REJECTING UNINSURED MO-TORIST COVERAGE UNDER THIS RENTAL OR LEASE AGREEMENT AND ANY POLICY OF INSURANCE OR SELF–INSURANCE ISSUED UNDER THIS AGREEMENT, FOR MYSELF AND ALL OTHER PAS-SENGERS OF THIS VEHICLE. UNINSURED COVERAGE PRO-TECTS ME AND OTHER PASSEN-GERS IN THIS VEHICLE FOR LOSSES AND DAMAGES SUF-FERED IF INJURY IS CAUSED BY THE NEGLIGENCE OF A DRIVER WHO DOES NOT HAVE ANY IN-SURANCE TO PAY FOR LOSSES AND DAMAGES.[2]

While occupants of the rented vehicle, the Smiths were involved in an accident with another vehicle operated by an uninsured driver.[3] The Smiths made this claim for UM benefits from Enterprise. The trial court determined that, despite the UM rejection language in the rental agreement, Enterprise owed UM coverage to the Smiths. In its appeal, Enterprise asserts this was error.

¶ 4 We must consider the interplay of two separate statutes within the MVFRL, and case law that has interpreted them. First, we note that self-insured entities such as Enterprise are governed by 75 Pa.C.S. § 1787. Section 1787 provides, in pertinent part:

(a) **General Rule.**—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

(1) Provide the benefits required by section 1711 (relating to required benefits), subject to the provisions of Subchapter B (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to availability of benefits) and section 1715 (re-

---

2. The record contains two different forms of this agreement that include slightly different UM rejection language. We consider the language on the form submitted by Enterprise in its answers to requests for admission, and relied upon in its arguments to the trial court and this Court. Appellees do not dispute that Sharmetha Smith signed this form.

3. Reginald Drummond drove a vehicle owned by Evangeline Drummond, and struck the rear of the Smiths' rented car. Because Reginald Drummond had allegedly stolen the vehicle, its insurer denied coverage.

lating to availability of adequate limits).

(2) Make payments sufficient to satisfy judgments as required by section 1774 (relating to payments sufficient to satisfy judgments).

(3) *Provide uninsured motorist coverage up to the limits set forth in section 1774.*[4]

75 Pa.C.S. § 1787(a) (emphasis added). The trial court reasoned that § 1787(a)(3) requires Enterprise, which is self-insured, to provide UM coverage to its rental customers. The trial court so held even though other motorists are no longer required to purchase UM coverage from ordinary insurers under the MVFRL. 75 Pa.C.S. § 1731(a).[5]

¶ 5 The trial court relied principally on our decision in *Gutman v. Worldwide Ins. Co.,* 428 Pa.Super. 309, 630 A.2d 1263 (1993). In *Gutman,* rental customers sought UM benefits from a self-insured rental agency after they were involved in an accident with an uninsured vehicle while occupying their rental car. In rejecting the defendant rental agency's claim that the plaintiff renters had waived UM benefits by signing a rejection form authorized by 75 Pa.C.S. § 1731(b), and deciding that the rental agency must pay UM benefits to those plaintiffs, we specifically held:

> Self-insurers [6] are required to provide a minimum amount of uninsured motorist coverage. Nothing in...75 Pa.C.S.A. § 1731, alters this requirement. We hold that the trial court correctly ruled that uninsured motorist coverage is mandated for self-insurers despite the optional provisions recently enacted for purchasers of liability insurance under 75 Pa.C.S.A. § 1713[sic]. Any attempt by [defendant] Agency to avoid this requirement by the inclusion of a contract provision waiving uninsured motorist coverage is invalid since it violates the statutory requirements of a self-insurer. *See* 75 Pa.C.S. § 1787(a)(3).

*Gutman,* 630 A.2d at 1265.

¶ 6 At first blush, it appears that *Gutman* controls this case, and that we must affirm the trial court. However, Enterprise argues that *Gutman* no longer applies, because § 1731 has been amended since that case was decided. Specifically,

---

**4.** Section 1774 of the MVFRL provides, in pertinent part:

(a) **General Rule.**—For the purpose of this chapter only, judgments shall be deemed satisfied upon the occurrence of one of the following:

(1) When $15,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to one person as the result of any one accident.

(2) When $30,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to two or more persons as the result of any one accident.

(3) When $5,000 has been credited upon any judgment or judgments rendered in excess of that amount because of damage to property of others as the result of any one accident.

75 Pa.C.S. § 1774(a).

**5.** Section 1731 of the MVFRL requires that "no motor vehicle insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist or underinsured motorist coverages are offered therein." 75 Pa.C.S. § 1731(a). Purchase of uninsured or underinsured motorist coverages is optional, but under § 1731(a), it must be offered by the insurer. The statute sets forth the specific language a rejection of such coverage must include, and such rejection or waiver of UM/UIM coverages must be signed by the insured. 75 Pa.C.S. § 1731(b), (c).

**6.** We use the term "self-insured."

§ 1731 now includes the following language regarding rejection of UM benefits:

> (b.1) **Limitation of rejection.**—Uninsured motorist protection may be rejected for the driver and passengers for rental or lease vehicles which are not otherwise common carriers by motor vehicle, but such coverage may only be rejected if the rental or lease agreement is signed by the person renting or leasing the vehicle and contains the following rejection language:
>
> REJECTION OF UNINSURED MOTORIST PROTECTION I am rejecting uninsured motorist coverage under this rental or lease agreement, and any policy of insurance or *self-insurance* issued under this agreement, for myself and all other passengers of this vehicle. Uninsured coverage protects me and other passengers in this vehicle for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.

75 Pa.C.S. § 1731(b.1) (emphasis added). Enterprise argues that this new statutory provision expands upon the older language relating to self-insureds in § 1787(a)(3), and since Sharmetha Smith signed a rental agreement with the required rejection language, her waiver of UM coverage is valid. We agree.[7]

¶ 7 However, we must consider the Smiths' argument that recent cases appear to apply *Gutman*, even *after* the enactment of § 1731(b.1). In *Ingalls v. Hertz Corp.*, 453 Pa.Super. 415, 683 A.2d 1252 (1996), a Superior Court panel held that Hertz, a self-insured rental agency, was not obligated to provide underinsured motorist (UIM) coverage to its rental customers. The customer-plaintiffs had rejected such coverage in the rental agreement, but the waiver did not comply with the rejection/waiver requirements of 75 Pa.C.S. § 1731(c) (relating to UIM coverage). In denying the plaintiffs' claim for UIM benefits, the Court reasoned that, although § 1787 requires self-insureds to "provide" UM benefits, it does not require the provision of UIM benefits. Therefore, the Court held, Hertz did not have to comply with the rejection/waiver requirements of § 1731(c).

¶ 8 In making its decision, the *Ingalls* court said that "this court in *Gutman* has already found that the statutory provisions of § 1731 do not apply to self-insurers." *Id.* at 1253. However, this statement is irrelevant here. Though *Ingalls* was published in 1996, after the enactment of new

---

**7.** We point out that a self-insured entity such as Enterprise is not considered an insurance company (an "insurer") under the MVFRL. 75 Pa.C.S. § 1702. Under *Gutman* and its progeny, the concept of self insurance appears to be expanded; the case law seems to treat self-insureds as "insurers" in the traditional sense, and we question this trend. The MVFRL requires that all drivers have financial responsibility, that is, a way to pay for judgments arising out of automobile accidents. Most ordinary drivers comply with this requirement by purchasing insurance from traditional insurance companies. However, some entities choose to be "self-insured." Section 1787 of the MVFRL sets forth the requirements for "self-insurance." Section 1787 requires that a self-insured entity be able to "provide" coverage up to certain minimum limits, to *itself*. This means, for example, that a self-insured entity which is involved in an accident is responsible to provide coverage of that accident *by itself*, rather than look to an insurance company which issued an insurance policy. The provisions of § 1787 do not make a self-insured entity that happens to be a rental car company into an insurance company that must "provide" coverage to its *customers*, especially where those customers signed a clearly worded rejection form authorized by 75 Pa.C.S. § 1731(b.1). The amendment of § 1731 to include language specifically relating to rental vehicles appears to respond directly to this interpretation of the statutory scheme reflected in *Gutman*.

§ 1731(b.1), it is not clear from the decision when the events in *Ingalls* took place, and the panel did not cite to or discuss the new statutory language. Thus, the *Ingalls* court did not rule on the applicability of § 1731(b.1) to a situation such as the one before us.

¶ 9 We also consider *Saunders v. Jenkins,* 717 A.2d 561 (Pa.Super.1998), which involved the rental of a vehicle from Hertz in 1991. The plaintiffs there also challenged the form of the liability, UIM and other insurance coverage offer and rejection provisions they signed as part of the rental agreement. *Id.* at 562. Our Court concluded that because 75 Pa.C.S. §§ 1791 and 1791.1 (relating to notice of availability of benefits and disclosure of tort options) do not apply to self-insureds, and because § 1787 does not require that self-insureds provide UIM coverage, Hertz was not liable to pay benefits to the plaintiffs. *Id.* at 564.

¶ 10 Both the *Ingalls* and *Saunders* courts relied on the fact that § 1787 had been the only statute in the MVFRL that related to self-insureds, and that the provisions of § 1731 thus did not apply to self-insureds. *See Hackenberg v. Southeastern Pennsylvania Trans. Auth.,* 526 Pa. 358, 364–65, 586 A.2d 879, 882 (1991) (§ 1787 is the only section in the MVFRL which defines the benefits for which a self-insured is liable). However, since the enactment of § 1731(b.1), which does refer specifically to *"self-insurance"* and rental agencies, the MVFRL does allow the customers of self-insured rental agencies to reject UM coverage, if the proper waiver language is signed.

¶ 11 In this case, Sharmetha Smith did sign a waiver of UM benefits in the form required by § 1731(b.1). The fact that her signature appeared on the reverse side of the waiver does not make it any less valid. *See Kline v. Old Guard Ins. Co.,* 820 A.2d

783 (Pa.Super.2003) (rejecting argument that plaintiffs could avoid consequences of unambiguous waiver on reverse side of signed form by proof they failed to read or understand it). We therefore reverse the trial court's order granting summary judgment in favor of the Smiths, and remand for further proceedings consistent with this opinion.

¶ 12 Judgment reversed and matter remanded. Jurisdiction relinquished.