**ROBERT HALF INTERNATIONAL INC., Appellant,**

**v.**

**MARLTON TECHNOLOGIES, INC., Appellee.**

Superior Court of Pennsylvania.

Submitted March 9, 2005.

Filed June 20, 2006.

---

4. 75 Pa.C.S.A. § 3361.

Alfred W. Putnam, Philadelphia, for appellant.

Scott B. Gorman and Emmett F. Fitzpatrick, Jr., Philadelphia, for appellee.

BEFORE: HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN, and PANELLA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Robert Half International Inc. ("RHI"), asks us to determine whether the Court of Common Pleas had jurisdiction to enter a judgment of *non pros* against RHI for failing to appear for the scheduled compulsory arbitration hearing on its complaint against Appellee, Marlton Technologies, Inc. ("Marlton"). RHI also challenges the court's jurisdiction over Marlton's counterclaim, through a Rule 1303(b)(2) proceeding, to enter judgment against RHI on Marlton's counterclaim. We hold the trial court erred when it proceeded on Marlton's counterclaim by operation of Pa.R.C.P. 1303 and Phila.R.Civ.P. *1303, where the filing of Marlton's counterclaim immediately divested the arbitration program of jurisdiction under the circumstances of this case. Ac-

cordingly, we vacate the judgment of *non pros* entered against RHI on its complaint; vacate the judgment entered in favor of Marlton and against RHI on Marlton's counterclaim; and remand for further proceedings.

¶ 2 The relevant facts[1] and procedural history of this appeal are as follows. In December 2000, the parties entered into an agreement whereby RHI would provide computer consultants at an hourly rate to Marlton for a software project under Marlton's supervision and control. In June 2001, representatives from RHI and Marlton met to discuss the software project. The parties also discussed some difficulties arising from the project. Nevertheless, Marlton agreed to pay and paid RHI's outstanding invoices in the amount of $75,024.55. Thereafter, RHI continued to provide consultant services to Marlton. Marlton refused to pay for the additional services.

¶ 3 Represented by an attorney in Pittsburgh, RHI filed a complaint in the Philadelphia County Court of Common Pleas on September 4, 2002, against Marlton for breach of contract. RHI's complaint claimed Marlton failed to pay amounts due for the additional consulting services rendered and sought judgment against Marlton in the amount of $35,864.74, plus collection costs, contract counsel fees, costs, and interest. RHI's complaint specified an amount in controversy within the local compulsory arbitration limit of $50,000.00.

¶ 4 On September 5, 2002, the Prothonotary scheduled a compulsory arbitration hearing. The certified docket entry for September 5, 2002, simply states: "Arbitration hearing scheduled." Court officials stamped the time, date and location for the arbitration hearing on the first page of the record copy of RHI's complaint, along with the following notice:

> This matter will be heard by a board of arbitrators at the time, date and place specified but, if one or more parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent [party] or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge.

(RHI's Complaint, filed 9/4/02, at 1).

¶ 5 On December 9, 2002, Marlton filed an answer with new matter and counterclaim, alleging breach of contract, fraud, negligent misrepresentation and promissory estoppel. Marlton sought $75,024.00 in recoupment, consequential damages, plus punitive damages, costs, fees, interest and other relief. Notably, Marlton's pleading demanded a jury trial, which Marlton perfected. Marlton's pleading was not stamped with notice of any intent to proceed to arbitration on the counterclaim and no arbitration was scheduled for the counterclaim. On January 8, 2003, two Philadelphia-based attorneys entered their appearance on behalf of RHI, as the counterclaim defendant (RHI's "counterclaim counsel"). Counterclaim counsel also filed an answer to Marlton's counterclaim on January 8, 2003. On January 9, 2003, RHI's counsel for the original complaint filed a separate reply to Marlton's new matter.

¶ 6 On May 1, 2003, neither RHI nor any of its attorneys appeared at the scheduled arbitration hearing. The director of the arbitration center certified RHI's failure to appear to prosecute its claim against Marlton. With Marlton's consent, the case was transferred to the major non-

---

1. The agreed-upon averments set forth in the pleadings are the source for the factual back-

ground of the case.

jury division of the Court of Common Pleas, pursuant to Pa.R.C.P. 1303(b)(2) and Phila.R.Civ.P. *1303, without the absent party (RHI). The case was listed and immediately called for trial. The trial court first entered a judgment of *non pros* against RHI for failing to appear at the arbitration. The court then proceeded with a trial on Marlton's counterclaim. Marlton's counsel informed the court that Marlton's claim was independent of RHI's claim and presented evidence on the existence of a contract between RHI and Marlton, RHI's alleged breach of contract, and the damages averred as a result of the alleged breach. Essentially, Marlton requested compensatory (in the nature of recoupment) damages in an amount equal to what Marlton had already paid RHI ($75,024.00). Marlton then proposed consequential damages in the amount of $438,589.00 as the total cost of additional expenses caused by the failure of the project. By order dated May 1, 2003, and docketed May 5, 2003, the court entered a judgment of *non pros* in favor of Marlton and against RHI, for failure to appear at the scheduled arbitration hearing. The court awarded Marlton a total of $513,613.00 on its counterclaim. That same date, Rule 236 notice of the court's decision was sent to the appropriate parties.

¶ 7 On May 9, 2003, RHI's counterclaim counsel filed a motion for post-trial relief, in the nature of motion to strike the findings of the court with regard to the counterclaim and a request for oral argument before the trial court *en banc.* As counterclaim defendant, RHI essentially argued as follows:

> [U]nder no circumstances could the **counterclaim be subject to arbitration because the amount in controversy on the face of the counterclaim exceeds the jurisdictional limit of $50,000.** Thus, there can be no doubt that the counterclaim's submission to arbitration violated the unambiguous statutory directive that "no matter" shall be referred to arbitration where the amount in controversy exceeds $50,000. Accordingly, regardless of whether or not the claims of the complaint were subject to arbitration, given the amount of the counterclaim, referral to arbitration of the counterclaim itself cannot be reconciled with the statutory prohibition against the referral of "any matter" involving an amount in controversy greater than $50,000.

(Motion for Post-trial Relief of Counterclaim, 5/9/03, at 1–2) (emphasis in original). Because Marlton's counterclaim was not within the compulsory arbitration limits, RHI maintained the arbitration panel had no authority to render a judgment on the counterclaim or refer the counterclaim to the trial court *via* Pa.R.C.P. 1303(b)(2) and Phila.R.Civ.P. *1303(a). RHI respectfully requested the trial court to strike the findings in favor of Marlton and against RHI for damages in the amount of $513,613.00.

¶ 8 On May 12, 2003, RHI filed a motion for post-trial relief as plaintiff in the original complaint. In this motion, RHI first sought relief from the judgment of *non pros* and also from the findings in favor of Marlton on its counterclaim. Specifically, RHI claimed it had a reasonable explanation for failing to appear at arbitration: (1) it did not receive any notice from the Prothonotary regarding the date of the arbitration hearing; (2) the amount in controversy in Marlton's counterclaim alone placed the entire case well outside the jurisdictional limits for compulsory arbitration; (3) Marlton sought a jury trial on its counterclaim; and (4) there was no Rule 1303 notice on Marlton's answer with new matter and counterclaim, giving RHI notice that failure to appear for the scheduled arbitration would subject the counter-

claim to referral and a hearing before a judge of the Court of Common Pleas. RHI further asserted that Marlton's counterclaim and jury trial demand rendered the entire matter inappropriate for compulsory arbitration. The lack of Rule 1303 notice and the total amount in controversy reasonably explained RHI's position on jurisdiction and its consequent absence at arbitration. As such, RHI concluded the court erred when it entered the *non pros* against RHI and the favorable finding for Marlton on its counterclaim. RHI asked the court to strike both the *non pros* and its finding on the counterclaim.

¶ 9 On May 19, 2003, Marlton filed an answer with new matter to RHI's motions, in which Marlton averred: (1) lack of actual notice of the arbitration date is no excuse for failure to appear, where the rules of court make clear that all cases subject to compulsory arbitration will be assigned a hearing date and RHI had the responsibility to inquire about the scheduled date in the absence of actual notice; therefore, RHI's excuse for failure to appear at the scheduled arbitration hearing was not reasonable or sufficient to warrant striking or opening the *non pros;* (2) Marlton's counterclaim in excess of the jurisdictional limit for compulsory arbitration did not oust the arbitrators of jurisdiction over RHI's original claim; (3) either RHI or Marlton could have opted out of the arbitration program by filing a petition[2] for approval to transfer from arbitration to the major [trial] list in accordance with Phila.R.Civ.P. *1303(g), which neither party did; (4) there is no statute or rule that automatically removes a case from arbitration if a counterclaim pleads damages in excess of the arbitration jurisdictional amount; the counterclaim here was an "independent" cause of action;

(5) if the case had proceeded to arbitration, Marlton would have limited its counterclaim to $50,000.00 at the arbitration hearing, but the counterclaim was not so limited once it transferred to Common Pleas Court *via* Rule 1303; and, (6) RHI waived its jurisdictional argument for failing to raise it pre-trial. Marlton asked the court to deny the relief requested.

¶ 10 The trial court conducted a hearing on RHI's post-trial motions on May 29, 2003. At that time, RHI's counterclaim counsel asserted his copy of RHI's complaint, sent to him as a courtesy by RHI's other counsel, was not stamped with the arbitration date. Moreover, Marlton's answer with new matter and counterclaim did not indicate that Marlton intended to proceed with its claim at arbitration. Because Marlton's counterclaim involved an amount in controversy greater than $50,000.00, RHI's counterclaim counsel expected the matter would go to a jury trial. Thus, RHI's counterclaim counsel began to pursue discovery in this case. RHI's counterclaim counsel made three phone calls to Marlton's counsel regarding discovery, in January and February of 2003. (N.T. Hearing, 5/29/03, at 20–21; R.R. at 256a–257a). RHI's counterclaim counsel even served Marlton's counsel with interrogatories on April 17, 2003. (*Id.*) (*See also* Certificate of Service for RHI's Interrogatories, dated 4/17/03; R.R. at 136a).

¶ 11 RHI's counterclaim counsel admitted he had not checked the docket entries for the case until after the date of the scheduled arbitration. Further, RHI's counterclaim counsel did not contact the Prothonotary to obtain a copy of RHI's original complaint as filed, which would have revealed the arbitration date set for the original claim. Nevertheless, RHI's

---

**2.** The rule, as amended in 2004, now states: "A motion for Approval to Transfer from Arbitration to Day Forward must be filed with the Prothonotary." We note only the language change in the amendment, which does not affect the case before us.

counterclaim counsel insisted his failure to take such steps did not alter the fact that Marlton's counterclaim from its inception fell outside the arbitration program. RHI's counterclaim counsel asked the court to vacate the finding entered in favor of Marlton on its counterclaim and return the counterclaim to the major trial list of the Court of Common Pleas.

¶ 12 Counsel for RHI as the plaintiff on its original claim also offered what he considered reasonable justification for the failure to appear at the May 1st arbitration hearing. Counsel expected this case would not proceed to arbitration, once Marlton filed its counterclaim, because the amount in controversy on the counterclaim exceeded $50,000.00. Additionally, counsel claimed he had not received notice of the arbitration date. Counsel stated the Prothonotary returned two items to him after RHI's original complaint was filed: a copy of the civil cover sheet from the complaint and the receipt from the filing. Neither of these papers contained the arbitration date and Rule 1303 stamp. Counsel conceded he did not make any inquiries to determine if arbitration had been scheduled and for what date, such as checking the docket, contacting the Prothonotary or the Arbitration Center, because he did not think he had to do so in light of the counterclaim.

¶ 13 By order entered August 25, 2003, the trial court denied all of RHI's post-trial motions. On September 5, 2003, the court entered final judgment of *non pros* against RHI, as well as judgment in favor of Marlton on its counterclaim in the amount of $513,613.00. RHI filed its notice of appeal on September 22, 2003.

¶ 14 On October 25, 2004, a panel of this Court affirmed. On November 8, 2004, RHI requested *en banc* reargument, which this Court granted on December 28, 2004.

¶ 15 RHI raises the following three issues for our review:

DID THE TRIAL COURT ERR IN DETERMINING THAT IT HAD JURISDICTION OVER THE COUNTERCLAIM UPON REFERRAL FROM THE ARBITRATION CENTER UNDER RULE 1303(b)(2) SO AS TO PERMIT IT TO CONDUCT A BENCH TRIAL AND AWARD $513,613 TO MARLTON WITHOUT [RHI] PRESENT WHERE THE COUNTERCLAIM WAS NEVER SUBJECT TO ARBITRATION?

DID THE TRIAL COURT ERR IN DETERMINING THAT IT HAD JURISDICTION OVER THE COMPLAINT SO AS TO PERMIT IT TO ENTER AN ORDER OF *NON PROS* ON THE COMPLAINT PURSUANT TO RULE 1303(b)(2) WHERE THE COMBINED AMOUNT IN CONTROVERSY BASED ON THE FACE OF THE COMPLAINT AND COUNTERCLAIM EXCEEDED THE $50,000 ARBITRATION LIMIT ESTABLISHED BY 42 PA.C.S. § 7361?

DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN REFUSING TO GRANT THE POST–TRIAL MOTIONS BECAUSE [RHI'S] FAILURE TO APPEAR WAS EXCUSABLE UNDER THE CIRCUMSTANCES PRESENTED BY THIS CASE?

(RHI's Brief at 4).

¶ 16 Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. *MCI WorldCom, Inc. v. Pennsylvania Public Utility Com'n*, 577 Pa. 294, 844 A.2d 1239 (2004). Questions of law are subject to a *de novo* standard of review. *Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159 (2004). Any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a particular mat-

ter is an issue the parties cannot waive by agreement or stipulation, estoppel, or waiver. *In re Melograne*, 571 Pa. 490, 812 A.2d 1164 (2002). *See also James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority*, 579 Pa. 26, 855 A.2d 669 (2004). In other words, the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time. *In re Adoption of N.M.B.*, 564 Pa. 117, 122 n. 1, 764 A.2d 1042, 1045 n. 1 (2000).

¶ 17 Initially, RHI asserts Marlton's counterclaim was ineligible for compulsory arbitration and the Rule 1303 referral process. The amount in controversy in Marlton's counterclaim exceeded the $50,000.00 limit for compulsory arbitration cases; and under Section 7631, "no matter with an amount in controversy greater than $50,000.00 is subject, under any circumstance whatsoever, to the compulsory arbitration program." (RHI's Brief at 12). Whether considered on its own or together with the original complaint, Marlton's counterclaim did not at any time belong in the compulsory arbitration program. No compulsory arbitration panel was competent to hear and decide Marlton's counterclaim, as demonstrated by the amount in controversy stated in the pleading. As such, Marlton's counterclaim was not properly referable, through the arbitration system and Rule 1303, to the Court of Common Pleas for an immediate disposition. RHI submits the Court of Common Pleas improperly asserted jurisdiction over the counterclaim at the same time the original matter came before the court by referral through the arbitration system. RHI insists the Court of Common Pleas had no jurisdiction to conduct an *ex parte* trial on Marlton's counterclaim as a consequence of RHI's failure to appear at the scheduled compulsory arbitration hearing.

¶ 18 Further, RHI contests the court's use of Phila.R.Civ.P. *1303(g) to allow Marlton's counterclaim to come before the court through the arbitration program and justify an *ex parte* trial on Marlton's counterclaim, based upon RHI's failure to file a petition with the Prothonotary to transfer the case from arbitration. RHI insists the arbitrators' lack of jurisdiction to arbitrate the case, given the amount in controversy, cannot be waived by virtue of RHI's failure to act prior to the arbitration hearing. RHI reasons Phila.R.Civ.P. *1303(g) was intended for situations where the amount in controversy is in doubt, not for situations such as this, where all parties acknowledge the amount in controversy in the case exceeds the jurisdictional limits of the arbitration program. Thus, RHI submits its failure to file a petition under the local rule to remove the case to the Day Forward program does not mean the counterclaim was properly before the arbitration panel and could be transferred to the Court of Common Pleas *via* Rule 1303 for complete disposition.

¶ 19 RHI also argues the trial court's decision to proceed on the counterclaim is problematic because it is inconsistent with the arbitration statute and existing case law, and contrary to public policy. In support of its contentions, RHI cites to various county decisions in Pennsylvania, which have specifically addressed situations where the amount in controversy asserted in a counterclaim surpassed the jurisdictional limits of compulsory arbitration. In the event a counterclaim exceeds the arbitration limits, the cases cited hold that the entire case is automatically outside the compulsory arbitration program. The court's decision is contrary to public policy because it allowed into arbitration a counterclaim that was above the statutory limits and further subjected the counterclaim to Rule 1303 referral to the Court

of Common Pleas and an *ex parte* trial. RHI suggests the court's decision constitutes a uniquely harsh and increased penalty for failure to appear at arbitration, invites abuse, and provides a means for gaining a judgment without the necessity of litigation. RHI urges this Court to resolve the dilemma before us in a practical, sensible manner to avoid the incongruous result that would permit a counterclaim to proceed through the arbitration process regardless of the amount in controversy, so long as it is filed after an arbitration date has been assigned to the original claim. RHI concludes the trial court erred when it exercised jurisdiction over Marlton's counterclaim under these circumstances, and this Court must reverse the judgment in favor of Marlton on its counterclaim.

¶ 20 As a natural consequence of its preceding arguments, RHI next contends the entire case (original claim and counterclaim) was ineligible for arbitration and the Rule 1303 referral process because the total amount in controversy exceeded the jurisdictional limits of the arbitration program. RHI maintains both the original claim and the counterclaim constitute the "case" for purposes of "amount in controversy." RHI argues the case should be tried as a single case; the claim and counterclaim should not be tried separately. Because the case involves an amount in controversy above the statutory limits for the arbitration program, the case should proceed directly through the major trial program in the Court of Common Pleas, even if an arbitration date was scheduled for the original claim. Forcing RHI's original claim through compulsory arbitration, where Marlton's counterclaim could not be heard, encourages piecemeal litigation. RHI claims the court erred when it exercised jurisdiction over the counterclaim *via* Rule 1303, where the entire case

did not belong in the arbitration program. For that reason also, RHI concludes the court erred when it refused to vacate its judgment of *non pros* and its judgment in favor of Marlton on the counterclaim. We agree.

¶ 21 Compulsory arbitration is governed by statute as follows:

## § 7361. Compulsory Arbitration

(a) **General Rule.**—Except as provided in subsection (b), when prescribed by general rule or rule of court such civil matters or issues therein as shall be specified by rule shall first be submitted to and heard by a board of three members of the bar of the court.

(b) **Limitations.**—No matter shall be referred under subsection (a):

(1) which involves title to real property; or

(2) where the amount in controversy, exclusive of interest and costs, exceeds:

(i) $50,000 in judicial districts embracing first, second, second class A or third class counties or home rule counties which but for the adoption of a home rule charter would be a county of one of these classes; or

\* \* \*

(c) **Procedure.**—The arbitrators appointed pursuant to this section shall have such powers and shall proceed in such manner as shall be prescribed by general rules.

(d) **Appeal for trial *de novo.***—Any party to a matter shall have the right to appeal for trial *de novo* in the court. The party who takes the appeal shall pay such amount or proportion of fees and costs and shall comply with such other procedures as shall be prescribed by general rules. In the absence of appeal the judgment entered on the

award of the arbitrators shall be enforced as any other judgment of the court. For the purposes of this section and section 5571 (relating to appeals generally) an award of arbitrators constitutes an order of a tribunal.

42 Pa.C.S.A. § 7361. Philadelphia is a city of the first class. 53 P.S. § 101. Therefore, the compulsory arbitration limit in this case was $50,000.00. 42 Pa.C.S.A. § 7361(b)(2)(i). The statute governs the amount in controversy and controls the forum. *Id.*

¶ 22 The principles governing statutory interpretation state:

Our object is to ascertain and effectuate the intention of the General Assembly. When the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning. In attempting to ascertain the meaning of a statute, we must consider the intent of the legislature and examine the practical consequences of a particular interpretation. We presume the legislature did not intend a result that is absurd and unreasonable. In construing legislative intent, this Court may look to the occasion and necessity of a statute, the circumstances in which it was intended, the mischief to be remedied, the object to be attained by the law, former law on the same subject and the consequences of a particular interpretation.

*Saunders v. Jenkins*, 717 A.2d 561, 563 (Pa.Super.1998). The plain language of Section 7361 makes clear no case shall be referred to compulsory arbitration, if the amount in controversy exceeds $50,000.00 (exclusive of interest and costs). 42 Pa. C.S.A. § 7361.

¶ 23 Pennsylvania Rule of Civil Procedure 1303 addresses compulsory arbitration hearings as follows:

**Rule 1303. Hearing. Notice**

(a)(1) **The procedure for fixing the date, time and place of hearing before a board of arbitrators shall be prescribed by local rule, provided that not less than thirty days' notice in writing shall be given to the parties or their attorneys of record.**

(2) The local rule may provide that the written notice required by subdivision (a)(1) include the following statement:

"This matter will be heard by a board of arbitrators at the time, date and place specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge."

(b) **When the board is convened for hearing, if one or more parties is not ready the case shall proceed and the arbitrators shall make an award unless the court**

(1) **orders a continuance, or**

(2) **hears the matter if the notice of hearing contains the statement required by subdivision (a)(2) and all parties present consent.**

*Note:* It is within the discretion of the court whether it should hear the matter or whether the matter should proceed in arbitration. If the court is to hear the matter, it should be heard on the same date as the scheduled arbitration hearing.

In hearing the matter, the trial court may take action not available to the arbitrators, including the entry of a nonsuit if the plaintiff is not ready or a *non pros* if neither party is ready. If the defendant is not ready, it may hear the matter and enter a decision.

\* \* \*

Pa.R.C.P. 1303 (emphasis added). The state rule defers to the local rules regarding the administrative details such as fixing the date, time and place of the arbitration hearing, and manner in which the hearing is conducted, but mandates at least thirty days' notice in writing to the parties or their attorneys of record. *Id.*

¶ 24 The Philadelphia Local Rules of Civil Procedure, Rule \*1303(a) in pertinent part provides:

**Rule \*1303 Scheduling of Arbitration Hearings, Relistings, Consolidations**

(a) **Scheduling of Arbitration Hearings.** All Arbitration Writs of Summons and Complaints must be accompanied by a Civil Cover Sheet.... All Arbitration Writs of Summons and Complaints must state in upper case on the upper, right-hand corner of the cover page "THIS IS AN ARBITRATION CASE." The date, time and place of the Arbitration hearing shall be entered on the Civil Cover Sheet or initial pleadings and on all service copies by the Prothonotary at the time of filing.

\* \* \*

(g) **Transfer from Arbitration to Major List.** A case filed as an Arbitration case may be certified as a major case only with court approval. A Petition for Approval to Transfer from Arbitration to Day Forward must be filed with the Prothonotary. The Petition for Approval to Transfer will not be granted if it is made immediately before the Arbitration hearing date and it appears that the requisite pleadings have not been filed.

Phila.R.Civ.P. \*1303 (a), (g).

¶ 25 Instantly, RHI filed its complaint against Marlton on September 4, 2002.

RHI's complaint demanded judgment in the amount of $35,864.74, plus collection costs, contract counsel fees, costs, and interest. The Civil Cover Sheet indicates the amount in controversy is $50,000.00 or less. The Civil Cover Sheet contained in the certified record does not have the date, time and place of the scheduled arbitration hearing. The Rule 1303 stamps, however, do appear on the first page of RHI's complaint contained in the certified record. The first page of the pleading designates a specific date (May 1, 2003), time (9:30) and place (1601 Market Street, 2nd floor, Five Penn Center Plaza) for the arbitration hearing.

¶ 26 Marlton filed an answer with new matter and counterclaim on December 7, 2002. Marlton's counterclaim alleged breach of contract, fraud, negligent misrepresentation and promissory estoppel, and demanded damages in the amount of $75,024.00 in contract fees already paid to RHI, consequential damages as a result of RHI's alleged breach of the same contract, plus punitive damages, costs, fees, interest and other relief. Notably, Marlton's pleading demanded a jury trial, which Marlton perfected. Marlton's pleading was not stamped with a Rule 1303 notice of intent to proceed to arbitration on the counterclaim, and the Prothonotary did not schedule the counterclaim for arbitration per Rule 1303. Marlton's counterclaim did not qualify for immediate referral to the arbitration program under the plain language of Section 7361. Thus, the arbitration panel did not have jurisdiction over Marlton's counterclaim *ab initio*, and the counterclaim was not subject to referral *via* Rule 1303 to the Court of Common Pleas. Even if the counterclaim had initially qualified for arbitration, RHI was given no Rule 1303 notice that Marlton would take its counterclaim before the ar-

bitration panel. Hence, RHI had no reason to expect to be in the Court of Common Pleas on Marlton's counterclaim by operation of Rule 1303. Either way, RHI should not have been subject to the penalty provisions set forth in Rule 1303 in this regard. Therefore, we conclude the trial court erred when it proceeded on Marlton's counterclaim in this manner at this stage of the proceedings.

¶ 27 Additionally, Section 7631 makes clear the monetary limits of compulsory arbitration are jurisdictional. Having examined the available alternatives, we conclude the best resolution of this dilemma is to hold that the filing of Marlton's counterclaim, which arose out of the same transaction as the original claim, immediately divested the arbitration program of jurisdiction over the entire case. Once Marlton filed its counterclaim, the whole case belonged in the Court of Common Pleas trial program. The Court of Common Pleas is better equipped through its extensive pre-trial processes to determine whether the case truly belongs in the trial program or in arbitration. The court's mandatory pretrial conferences and case management deadlines put the court in a better position to decide if the counterclaim is viable or just a ruse to defeat arbitration jurisdiction. If the parties ignore the case management deadlines, they risk dispositive pre-trial orders and judgments. Significantly, the Court of Common Pleas possesses the subject matter jurisdiction to rule on the entire case, which is a fundamental requirement for a reliable adjudication. Of course, the trial court can also remand the case to arbitration if the court resolves through its pretrial processes that the entire case really belongs in arbitration. *See* Pa.R.C.P. 1021(d); Phila.R.Civ.P. *1303 (f)(3).

¶ 28 As a matter of policy, our decision preserves and honors the significance of the compulsory arbitration program, but does not exaggerate its reach to include claims that are unmistakably prohibited under the arbitration statute. If we said that once this case was assigned to arbitration, it remained in arbitration, we would effectively enlarge the jurisdiction of the arbitration panel by allowing Marlton's counterclaim to proceed through arbitration channels. Authorizing Marlton's counterclaim to go before the trial court *via* Rule 1303 in this manner also raises serious due process concerns arising from the lack of notice.[3]

¶ 29 Based upon the foregoing, we hold the trial court erred when it proceeded on Marlton's counterclaim by operation of Rule 1303 and Phila.R.Civ.P. *1303, where the filing of Marlton's counterclaim immediately divested the arbitration program of jurisdiction under the circumstances of this case. Accordingly, we vacate the

---

**3.** The dissent takes the position that once a claim is assigned a compulsory arbitration hearing date in Philadelphia County, a counterclaim, arising out of the same facts and circumstances and constituting part of the same case, is irrelevant, jurisdictionally speaking. According to the dissent, the present case as originally filed belonged in compulsory arbitration, regardless of whether a counterclaim was later filed, absent a petition to transfer the case to the trial division of the Court of Common Pleas. This viewpoint overlooks two overarching legal constants: (1) subject matter jurisdiction of compulsory arbitration is controlled and expressly limited by statute; thus the arbitration panel was not competent to hear this case, once the counterclaim was filed; and (2) generally the actions or inactions of the parties cannot bestow or expand subject matter jurisdiction where it is otherwise lacking. *See* 42 Pa.C.S.A. § 7361; *Bernhard v. Bernhard*, 447 Pa.Super. 118, 668 A.2d 546 (1995); *Coleman v. Coleman*, 361 Pa.Super. 446, 522 A.2d 1115 (1987). Likewise, the customs of a particular county cannot override explicit statutory limitations on subject matter jurisdiction.

judgment of *non pros* entered against RHI, vacate the judgment entered in favor of Marlton on its counterclaim, and remand the matter to the trial court for further proceedings.[4]

¶ 30 Judgment vacated; case remanded for further proceedings. Jurisdiction is relinquished.

¶ 31 *JUDGE BENDER FILES A DISSENTING OPINION.

### DISSENTING OPINION BY BENDER, J.:

¶ 1 I respectfully dissent. As the Majority describes, RHI filed its complaint on September 4, 2002, asserting breach of contract and seeking $35,000 in unpaid consulting fees from Marlton. The following day, the Prothonotary properly assigned the case to compulsory arbitration pursuant to the plain language of the following applicable law.[5] First, 42 Pa.C.S. § 7361 indicates that "where the amount in controversy, exclusive of interest and costs" is $50,000 or less, the matter "shall first be submitted to and heard by a board of three members of the bar of the court." 42 Pa.C.S. § 7361(a) & (b)(2). Conversely, "[n]o matter shall be referred" to compulsory arbitration if the amount in controversy exceeds $50,000. *Id.* at § 7361(b). The phrases "shall first be submitted" and use of the term "referred," establish that this case was first properly assigned to arbitration upon the filing of RHI's complaint, which is the pleading that initiated this case.

¶ 2 Similarly, the Philadelphia local court rules indicate that "all cases having an amount in controversy, exclusive of interest and costs, of $50,000 or less ***shall be assigned*** to the Compulsory Arbitration Program of the Court of Common Pleas of Philadelphia County." Phila.Civ.R. 1301 (emphasis added). This plain and mandatory language further establishes that the arbitration panel acquired jurisdiction over this case upon the filing of the initial pleading in this case, RHI's complaint, seeking $50,000 or less in damages, and consequent mandatory assigning of the case by the Prothonotary to the Compulsory Arbitration Program.

¶ 3 It is at this point that I further disagree with the Majority's conclusion that, when Marlton filed its counterclaim seeking more than $50,000, the Arbitration Program was "immediately divested" of its jurisdiction. *See* Majority Opinion at 520. No authority exists for this proposition. Indeed, with the exception of Phila.Civ.R. 1303(g), the Philadelphia local rules as well as section 7361 are silent as to what event could potentially destroy the Arbitration Program's subject matter jurisdiction over a case that was properly assigned to it in the first place. We are not to add words to a statute or rule that the promulgating body has omitted, unless such words are necessary for its construction. *In re Hancock*, 719 A.2d 1053, 1055 (Pa.Super.1998). Additionally, "[a]s a matter of statutory

---

4. Due to our disposition of the jurisdictional issues, we need not address whether RHI's failure to appear at the scheduled arbitration hearing was excusable under the circumstances presented by this case. Nevertheless, we urge counsel in general to act swiftly to investigate and confirm the customs of the county in which cases are filed.

5. In interpreting this law, I apply our rules of construction such as, "[w]here [a statute or

rule] is unambiguous, the plain language controls, and it cannot be ignored in pursuit of the statute's alleged contrary spirit or purpose." *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 82 (Pa.2006). In other words, "[w]hen the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.C.P. 127(b).

interpretation, although 'one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say.'" *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955, 962 (2001) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 536 (1947)). The Majority's conclusion that the arbitration panel was immediately divested of jurisdiction when Marlton filed its counterclaim would require rewriting of the applicable rules of civil procedure, and violates the above-noted precepts of statutory construction.

¶ 4 Indeed, although the rules do not provide for automatic and immediate divestment of jurisdiction under these circumstances, the rules *do*, however, expressly provide a mechanism by which a party *may affirmatively petition for transfer* out of arbitration into the trial court. Phila.Civ.R. 1303(g). Rule 1303(g) clearly provides that "[a] case filed as an Arbitration case may be certified as a major case only with Court approval." According to the plain language of the Philadelphia local rules, no mechanism is provided for immediate, automatic, divestment of arbitration jurisdiction, but there is an express provision by which a party can file an application to have an arbitration case transferred to the trial court.[6]

¶ 5 Had this case been in another county, the outcome may have been different. For example, in Bucks County, a case is placed on the Arbitration List only after praecipe is filed with the prothonotary. Bucks Cty. Civil R. 1303(c). Similarly, in Lancaster County, an action is submitted to an arbitration panel when "[a] party or his attorney files with the Prothonotary, after the closing of all pleadings, a praecipe for reference, indicating that the case is at issue [for arbitration]." Lancaster Cty. Civ. R. 1301(C)(1). Clearly, both of these local rules contemplate that the parties take some affirmative action to place a case in arbitration in the first place and that these parties could, therefore, consider the damages asserted in any counterclaims before filing a praecipe for compulsory arbitration. Moreover, in these counties, if a counterclaim is filed before the case is submitted to arbitration, the damages sought in that counterclaim may defeat arbitration jurisdiction from attaching *in the first place.*

¶ 6 However, the Philadelphia local court rules are much different. As explained above, arbitration jurisdiction attaches once a matter is assigned to arbi-

---

6. Thus, I agree with the Majority's statements that the "subject matter jurisdiction of compulsory arbitration is controlled and expressly limited by statute" and that "generally the actions or inactions of the parties cannot bestow or expand subject matter jurisdiction where it is otherwise lacking." Majority Opinion at 529 n. 3. Indeed, these precepts are consistent with my position that the plain language of 42 Pa.C.S. § 7361 and Phila.Civ.R. 1303, reveals that this case was initially and properly referred to the Arbitration Program when RHI filed their complaint seeking less than $50,000, and, accordingly, the Arbitration Program properly had subject matter jurisdiction over the case. These same provisions are silent with regard to the Arbitration Program being "immediately divest-ed" of jurisdiction once a counterclaim seeking damages in excess of $50,000 is later filed. Again, Phila.Civ.R. 1303(g) provided a means to have the case transferred out of arbitration upon a party's request; however, that did not occur in this case and no other statute or rule exists whereby arbitration jurisdiction would be automatically and/or immediately divested. Accordingly, the trial court properly exercised subject matter jurisdiction over the case when it was transferred from arbitration following RHI's failure to appear at the arbitration hearing. *See Bernhard v. Bernhard*, 447 Pa.Super. 118, 668 A.2d 546, 548–49 (1995) ("The trial court has jurisdiction if it is competent to hear and determine controversies of the general nature of the matter involved *sub judice.*").

tration, which properly occurred when RHI filed its initial complaint with the Prothonotary. Furthermore, the Philadelphia local rules are silent with regard to getting a case out of arbitration once it has been properly assigned, with the exception of a party's affirmative request for a transfer under Phila.Civ.R. 1303(g), which did not occur in the instant case. The proper mechanism by which the outcome in similar future cases in Philadelphia County could be changed is by amendment or revision of the Philadelphia local rules, Pennsylvania Rules of Civil Procedure, or our consolidated statutes.

¶ 7 Finally, in support of its decision that Marlton's counterclaim was not subject to arbitration jurisdiction, the Majority states that the counterclaim was not stamped with a Rule 1303 notice to proceed in arbitration. Majority Opinion at 528. However, in my opinion, because the case, of which the counterclaim was a part,[7] was already under the jurisdiction of the arbitration panel from the time it was assigned there by the Prothonotary the day after RHI filed its initial complaint, there was no reason to include the Rule 1303 stamp on the counterclaim.

¶ 8 Since I conclude that there is no authority to support the proposition that arbitration jurisdiction was immediately divested upon the filing of Marlton's counterclaim, I further conclude that the trial court did properly have jurisdiction over the case once it was transferred to it pursuant to Pa.R.C.P. 1303(b)(2) and Phila.Civ.R. 1303, upon RHI's failure to appear at arbitration.

¶ 9 Also, I opine that this result would conform to the public policy underlying compulsory arbitration, especially with a docket as busy as that in Philadelphia County, which is perhaps why the Phila-

delphia local rules provide for automatic assignment to arbitration by the Prothonotary, rather than requiring affirmative action on the part of a party to refer the action to arbitration in the first place. Indeed, the purpose of compulsory arbitration is to relieve the overburdened trial court dockets that exist in some communities and provide for a quicker, easier, and more economical avenue for the disposition of cases. *Emporium Area Joint Sch. Auth. v. Anundson Constr. & Bldg. Supply Co.*, 402 Pa. 81, 166 A.2d 269, 270 (1960); Pa.R.C.P. 1301–1314 (Preface, Explanatory Cmt. (1981)). *See also Ice City, Inc. v. Insurance Co. of N. Am.*, 456 Pa. 210, 314 A.2d 236, 241 (1974) ("It is beyond cavil that settlement of disputes by arbitration or appraisal is the approved public policy of this Commonwealth."); *Pantoja v. Sprott*, 721 A.2d 382, 384–85 (Pa.Super.1998) (indicating that "compulsory arbitration system was adopted in order to alleviate the enormous case load of our trial courts" and that the overall objective of the system is to "expeditiously dispose of pending litigation").

¶ 10 Also, the Majority states that

RHI suggests the court's decision constitutes a uniquely harsh and increased penalty for failure to appear at arbitration, invites abuse, and provides a means for gaining a judgment without the necessity of litigation. RHI urges this Court to resolve the dilemma before us in a practical, sensible manner to avoid the incongruous result that would permit a counterclaim to proceed through the arbitration process regardless of the amount in controversy, so long as it is filed after an arbitration date has been assigned to the original claim.

Majority Opinion at 526.

¶ 11 I disagree with these arguments. First, one could argue that the rule an-

---

**7.** I agree with the Majority that Marlton's counterclaim "arose out of the same transac-

tion as the original claim[.]" Majority Opinion at 529.

nounced by the Majority, wherein arbitration jurisdiction would be immediately divested upon the filing of a counterclaim seeking damages greater than $50,000, could invite abuse whereby parties would file large counterclaims in order to remove a case from arbitration. Indeed, the Majority recognizes the possibility that a counterclaim may be filed as a "ruse to defeat arbitration jurisdiction." Majority Opinion at 529. Additionally, I emphasize that the counterclaim would not be irretrievably stuck in arbitration regardless of the amount in controversy—in making the above argument, RHI ignores the fact that the Philadelphia local rules provide a means by which RHI could have filed a petition to transfer the entire matter out of arbitration once Marlton filed its counterclaim, *i.e.,* Phila.Civ.R. 1303(g).[8] In this regard, I emphasize that "[t]he local rules, administrative regulations and filing requirements of the Philadelphia County Court System are widely publicized to the Bar through bound volumes, continuing education, court memoranda and lectures, and are available in the ... Court filing office." *Schuylkill Navy v. Langbord,* 728 A.2d 964, 968 (Pa.Super.1999). Moreover, "[c]ounsel is under a high duty of care to learn and familiarize himself with the local rules of all forums in which he chooses to practice law[.]" *Ttmar, Inc. v. Sulka,* 402 Pa.Super. 319, 586 A.2d 1372, 1373 (1991). Accordingly, I would not agree with the proposition that trial court's application of the plain language of the state and local rules resulted in an unduly harsh outcome or violation of public policy.

¶ 12 For the foregoing reasons, I dissent with regard to the Majority's conclusion that the trial court did not have jurisdiction over this case when it was transferred to it following RHI's failure to appear at arbitration. Thus, having determined that the trial court did have jurisdiction, I would have proceeded to evaluate this case with regard to whether the trial court abused its discretion by refusing to strike or open the judgment it ultimately entered against RHI. *See Walt Med. v. Electro–Nucleonics,* 400 Pa.Super. 274, 583 A.2d 492, 493 (1990). I do not express an opinion herein with regard to whether the refusal to strike or open the judgment constituted an abuse of discretion.

---

**8.** Thus, I also disagree with the Majority's statement that "[i]f we said that once this case was assigned to arbitration, it remained in arbitration, we would effectively enlarge the jurisdiction of the arbitration panel by allowing Marlton's counterclaim to proceed through arbitration panels." Majority Opinion at 529 – 30. Not only do the Philadelphia

rules provide a mechanism by which a party can petition for transfer out of arbitration through Phila.Civ.R. 1303(g), which was not employed by RHI, I can find no authority or evidence tending to indicate that an arbitration panel would be incompetent to decide the issues in either the claim or the counterclaim.